# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 122

APRIL TERM, A.D. 2015

September 15, 2015

JASON TODD HIBSMAN,

Appellant
(Defendant),

v.

No. S-14-0298

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

**Representing Appellant:**
　　*Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Patricia L. Bennett, Assistant Appellate Counsel. Argument by Ms. Bennett.*

**Representing Appellee:**
　　*Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.*

**Before BURKE, C.J., and KITE\*, DAVIS, and FOX, JJ, and KAUTZ, D.J.\*\***

*\* Justice Kite retired from judicial office effective August 3, 2015, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015), she was reassigned to act on this matter on August 4, 2015.*

*\*\*Justice Kautz was a district judge at the time of oral argument. He was sworn in as a Justice on August 4, 2015.*

**NOTICE:   This opinion is subject to formal revision before publication in Pacific Reporter Third.   Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Jason Todd Hibsman, challenges his conviction of larceny by bailee in violation of Wyo. Stat. Ann. § 6-3-402.  He claims he received ineffective assistance of counsel and that the district court abused its discretion in awarding restitution in the amount of $127,208.10.  We conclude Mr. Hibsman did not receive ineffective assistance of counsel, and we affirm his conviction.  However, we remand to the district court for entry of an order reducing the amount of restitution.

## *ISSUES*

[¶2]    Appellant presents the following issues:

> 1. Whether Mr. Hibsman's defense counsel was ineffective, denying him the constitutionally guaranteed right to effective assistance of counsel.
>
> 2. Whether the district court abused its discretion in ordering Mr. Hibsman to pay restitution in the amount of $127,208.10.

The State phrases the issues in a similar manner.

## *FACTS*

[¶3]    Mr. Hibsman's father, John H. Hibsman, Jr., died testate on June 22, 2008.  The will divided his estate, which consisted primarily of two houses, located in Casper, Wyoming, as well as some personal property and stocks, equally among his four children.  In December 2008, the will was admitted to probate and, consistent with the will, Mr. Hibsman was appointed personal representative of his father's estate.  After his appointment, Mr. Hibsman hired attorney Michael Zwickl to represent him.  Mr. Hibsman did not, at any point, file an initial inventory or appraisal of the estate assets as required under Wyo. Stat. Ann. §§ 2-7-403 and -404.  The two houses held by the estate were sold in April and October 2009.

[¶4]    On October 18, 2010, nearly two years after he was appointed as personal representative of the estate, Mr. Hibsman filed a "Final Report, Accounting and Petition for Distribution."  That report represented the value of the estate to have been $478,894.94 at the time of the decedent's death.  The report stated that total expenditures from the estate had amounted to $358,466.26.  Of those expenditures, Mr. Hibsman claimed that $112,594.80 was paid for "Home Improvement & Repair/Labor," $26,170.65 was paid for "Hotel/Food/Gas for Jason," and 25,500.00 was paid for "Out of Pocket Expense reimbursed to Jason."

1

[¶5]   Mr. Hibsman's sister filed an objection to the final report in November and the matter was set for hearing.  Following the hearing, the probate court removed Mr. Hibsman as personal representative of the estate and appointed Mr. Zwickl to serve as temporary personal representative.  The court froze the estate's bank account and prohibited transfers of estate assets or property.  The court also ordered Mr. Hibsman to deliver "all documentation of the Estate" to Mr. Zwickl, including receipts showing all estate expenditures, a detail of all labor expenses, and an account of Mr. Hibsman's time and services as personal representative.  In response to the court's order, Mr. Hibsman filed an "Inventory of Estate" in January 2011 which valued the "total inventory" of the estate at $411,111.50.

[¶6]   In December 2010, attorney Robert Mullen was appointed as personal representative of the estate.  At the time Mr. Mullen took possession of the estate's bank account, it contained $99,067.59.  Following his appointment as personal representative, Mr. Mullen issued a report to the probate court concluding that Mr. Hibsman's inventory of the estate assets was incomplete and that, for nearly two years after being appointed personal representative, Mr. Hibsman had distributed assets of the estate and paid estate funds to himself without court approval and "without intelligible justification."  Mr. Mullen also reported the discrepancies in Mr. Hibsman's accounting to the Casper Police Department.  Following an investigation, the State charged Mr. Hibsman with one count of felony larceny by bailee in violation of Wyo. Stat. Ann. §§ 6-3-402(b) and (c)(i) (LexisNexis 2011).[1]

[¶7]   During the course of its investigation, the State obtained letters from Mr. Zwickl to Mr. Hibsman (the "Zwickl letters") relating to Mr. Hibsman's obligations as personal

---

[1]At the time of the events giving rise to this case Wyo. Stat. Ann. § 6-3-402 provided, in relevant part, as follows:

> (b)  A bailee, a public servant as defined by W.S. 6-5-101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

> (c)  Except as provided by subsections (e) and (f) of this section, larceny is:

>> (i)  A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more[.]

representative of the estate.[2]  The first of those letters, dated March 17, 2010, indicated that Mr. Zwickl had advised Mr. Hibsman that he could not make distributions from the estate without prior court approval.  The letter stated as follows:

> Several weeks ago we spoke about your dispersal of estate assets to your sisters on your own volition and without court approval, after you had already done those things.  After you advised me of your actions I told you that you should cease doing that because all matters needed to get court approval and now we have to [go] back to the court, after the fact and obtain court approval for those things that you've done without the court's approval.

The remaining letters, written in June, July, and August of 2010, sought an explanation for Mr. Hibsman's failure to provide a final accounting of the estate.

[¶8]    Prior to trial, the State filed a notice of intent to introduce the Zwickl letters into evidence.  At the hearing on the notice, defense counsel asserted that the letters were privileged attorney-client communications.  The State acknowledged that the letters potentially qualified as privileged, but asserted that they would be admissible to rebut Mr. Hibsman's assertion that he had not been advised of the need to seek court approval for estate expenditures.

[¶9]    The district court took the matter under advisement and allowed both parties to present additional argument on the issue prior to trial.  In a supplemental memorandum, the State claimed that Mr. Hibsman had waived the attorney-client privilege in a February 2011 letter to Mr. Mullen.  In that letter, Mr. Hibsman stated as follows:

> The reason I was remove [sic] [as personal representative] is I had some person [sic] expenditures on the estate account, however I did fully disclose those expenditures in the accounting. These expenditures were figured into my distributions. Also, after the fact, I learned that my legal council [sic] neglected to advise me of some of the proper procedure for probate in the state of WY. I.E. Submitting invoices to be approved by the court prior to paying myself, distributions to beneficiaries.

During a subsequent hearing, the district court noted that "[a]t first blush, the

---

[2] Mr. Zwickl passed away in the fall of 2011.

3

correspondence . . . does appear to be privileged communication between the attorney and . . . Mr. Hibsman[.]" The court stated that "it's very possible that the privilege has already been waived, but that has to be developed at trial." The court also warned Mr. Hibsman that if he took the stand at trial there was a "strong chance he could waive that privilege." The court ultimately reserved ruling on admissibility of the letters until the issue was "more fully developed at trial."

[¶10] On the first day of trial, defense counsel stated during opening remarks that Mr. Hibsman would testify that he had not been advised by Mr. Zwickl that he needed court approval prior to making expenditures on behalf of the estate:

> [N]ever once was he advised by [Mr. Zwickl], "Jason, in order for you to pay yourself for labor related to this estate, you had to get Court approval." Not once. You will not see one piece of evidence in this trial that said that Jason had to get that authorization. And that becomes very important.

During cross-examination of Mr. Mullen, defense counsel elicited testimony indicating that Mr. Hibsman's estate had filed a malpractice claim against Mr. Zwickl's estate and that Mr. Zwickl's estate had made an offer to settle. The State objected and asserted that counsel had opened the door to introduction of the Zwickl letters as a result of this line of questioning as well as his remarks during opening statements. The court indicated that questioning relating to the malpractice suit filed against Mr. Zwickl was not relevant and that counsel's opening remarks "may take us down the road of waiver." The court, however, did not rule on the admissibility of the Zwickl letters at that time.

[¶11] On the second day of trial, the State sought to introduce Mr. Zwickl's March 17, 2010 letter to Mr. Hibsman. The court admitted the letter over defense counsel's objection. Mr. Hibsman subsequently took the stand in his defense and testified that Mr. Zwickl had never advised him that he could not make expenditures from the estate without prior court approval. Mr. Hibsman acknowledged, however, that he had been advised that any distributions of the estate required prior court approval. He also testified that he had provided Mr. Zwickl with several accounting statements documenting his expenditures, as Mr. Zwickl had requested. The State subsequently moved to introduce the remainder of the letters it had identified in its pretrial notice. Defense counsel again objected asserting that the letters were privileged and that the privilege had not been waived. The court overruled the objection and admitted the letters written during the period that Mr. Hibsman alleged he had provided accounting statements to Mr. Zwickl. Each of the letters indicated that Mr. Zwickl had not received the requested accounting information from Mr. Hibsman.

[¶12] The district court clarified its evidentiary rulings in a written order issued on the last day of trial. The district court noted that Mr. Hibsman had waived the attorney-client

4

privilege (1) when his counsel asserted, during opening statements, that Mr. Zwickl had failed to advise Mr. Hibsman of the proper procedure for making estate expenditures, and (2) when his counsel elicited testimony from Mr. Mullen which attempted to show that Mr. Hibsman had not been adequately advised by Mr. Zwickl. The district court also noted that Mr. Hibsman opened the door to the introduction of the letters when he testified that he had provided multiple estate accountings to Mr. Zwickl. Finally, the district court stated that Mr. Hibsman "arguably waived the privilege prior to trial" in the letter to Mr. Mullen stating that he had not been advised of the need to seek court approval for estate expenditures.

[¶13] Following a three-day trial, the jury found Mr. Hibsman guilty of larceny by bailee. The district court sentenced Mr. Hibsman to eight to ten years in prison. The court suspended the sentence and placed Mr. Hibsman on probation for a period of six years. The court also ordered him to pay restitution in the amount of $127,208.10. This appeal followed.

## DISCUSSION

### I. Ineffective Assistance of Counsel

[¶14] In his first issue, Mr. Hibsman claims he received ineffective assistance of counsel. Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*. *Ortega-Araiza v. State*, 2014 WY 99, ¶ 5, 331 P.3d 1189, 1193 (Wyo. 2014).

[¶15] In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate, first, that trial counsel's performance was deficient, and second, that the deficient performance caused prejudice to the defense. *Rodriguez v. State*, 2010 WY 170, ¶ 14, 245 P.3d 818, 823 (Wyo. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). The failure to make the required showing of either deficient performance or prejudice will result in a finding that counsel was not ineffective. *Osborne v. State*, 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012).

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Sen v. State*, 2013 WY 47, ¶ 39, 301 P.3d 106, 121 (Wyo. 2013) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069).

[¶16] Mr. Hibsman contends that his counsel's actions are unexplainable in light of the district court's pretrial advisement that the defense could open the door to introduction of the Zwickl letters by placing the advice he received from Mr. Zwickl at issue. He claims that trial counsel "made an inexcusable blunder that caused the admission of evidence he had successfully argued would not be admitted absent him opening the door – evidence Defense Counsel acknowledged would be potentially devastating to his defense." Mr. Hibsman further contends, under the second prong of the *Strickland* test, that admission of the Zwickl letters was prejudicial. Mr. Hibsman claims there is a reasonable possibility the outcome of his trial would have been different absent the Zwickl letters.

[¶17] The State asserts that Mr. Hibsman waived the attorney-client privilege prior to trial when he sent the letter to Mr. Mullen stating that he was not advised that he was required to seek court approval for estate expenditures. The State contends that, as a result, his attorney's actions did not open the door to that evidence and did not constitute deficient performance. According to the State "Although the State does not disagree with the district court's analysis regarding whether waiver occurred at that time, the district court's analysis addressed a non-issue because, at the time of trial, no privilege existed that could be waived." In any event, the State claims that Mr. Hibsman was not prejudiced by his counsel's performance because the privilege did not apply at the time of trial.[3]

[¶18] We find it unnecessary to address the first prong of the ineffectiveness standard because Mr. Hibsman has not established he was prejudiced by counsel's alleged errors. *See Pendleton v. State*, 2008 WY 36, ¶ 21, 180 P.3d 212, 219 (Wyo. 2008); *Bloomer v. State*, 2010 WY 88, ¶ 19, 233 P.3d 971, 976 (Wyo. 2010). In order to show prejudice, Mr. Hibsman must demonstrate a reasonable probability that, absent the deficient performance of counsel, the outcome of his trial would have been different. *Galbreath v. State*, 2015 WY 49, ¶ 10, 346 P.3d 16, 20 (Wyo. 2015). He claims, in summary fashion, that "The evidence presented at trial, absent the [Zwickl] letters, would likely have left the jury with reasonable doubt as to Mr. Hibsman's intent. Absent the [Zwickl] letters, there is a reasonable likelihood the jury likely would have decided the case differently." We disagree.

[¶19] Mr. Hibsman claims that although his actions may have constituted a violation of the probate code, he did not commit any crime. The threshold felony amount for larceny by bailee is only $1,000.00. Wyo. Stat. Ann. § 6-3-402. The evidence is overwhelming

---

[3] Neither party has presented argument or authority relating to the issue of whether the attorney-client privilege was held by Mr. Hibsman or by the estate. Because the question has not been raised by the parties, and because our decision does not require resolution of the issue, we do not address it here.

that Mr. Hibsman stole, or deprived the other heirs of, funds from the estate in excess of this amount. Mr. Mullen testified that between December 2008 and November 2010, Mr. Hibsman had sole control over the estate's bank account as personal representative. During that time, he issued checks to himself and made ATM withdrawals from the estate's bank account totaling $137,566.46. He did so without receiving any court approval for his actions. Although the last home held by the estate sold in October 2009, Mr. Hibsman admitted that he continued to pay himself for work he allegedly performed on the houses until the court removed him as personal representative over a year later. Mr. Mullen testified that Mr. Hibsman had provided no "intelligible justification" for the amounts he paid to himself from the estate's bank account.

[¶20] The State also offered testimony from Jeremy Tiller, the investigating detective assigned to this case. Detective Tiller testified that the entries in the report of Mr. Hibsman's time and expenses, submitted in response to the court's order to provide a complete accounting of the estate, were inconsistent with the estate's bank statements. Detective Tiller provided specific examples. On August 29, 2009, Mr. Hibsman withdrew $305 from the estate account using an ATM at the Isle of Capri and Lady Luck casinos in Blackhawk, Colorado but claimed in his accounting report that these purchases were for supplies and home improvements. On September 10, 2009, Mr. Hibsman withdrew $202.50 from an ATM in Las Vegas but claimed in his accounting that the purchase was for gas and food.

[¶21] Detective Tiller also testified that Mr. Hibsman made a number of out-of-state purchases during periods when he claimed to be working on estate business in Casper. For example, from June 1 to June 6, 2009, Mr. Hibsman claimed to have spent 57 hours working on estate-related business in Casper, but bank statements showed that he made purchases in the towns of Parker and Aurora, Colorado, on June 3 and June 4. Between June 15 and June 26, 2009, Mr. Hibsman claimed to have spent 96 hours working for the estate, but he made purchases in Parker on June 23 and June 25. Between August 30, 2009, and September 11, 2009, Mr. Hibsman claimed to have spent 96 hours working for the estate in Casper. However, he made purchases in Parker on August 30 and September 4, and in Las Vegas on September 9 and 10.

[¶22] Finally, Detective Tiller noted that Mr. Hibsman and his girlfriend had each made loans to the estate. Mr. Hibsman's bank statements showed that he had accepted loans from his girlfriend on behalf of the estate totaling $14,200. Mr. Hibsman issued checks in repayment of the loan totaling $34,000. Mr. Hibsman's bank statements also indicated that he had loaned the estate $4,045. For this loan, Mr. Hibsman repaid himself $16,500.

[¶23] When Mr. Hibsman took the stand in his defense, he admitted that the numbers in the accounting he provided did not "add up." When he was questioned about the out-of-state purchases he made while he claimed to have been working for the estate in Casper, he stated that "my only answer for that is I'm – I'm not the greatest bookkeeper in the

world." However, he claimed that the hours he reported were "very accurate." With respect to the checks he wrote to himself after the houses held by the estate were sold, he stated that he had no explanation for why he wrote them "without speaking with the accountant or getting some clarification." Further, on cross-examination, Mr. Hibsman claimed to have paid approximately $6,000 in mortgage payments on one of the homes held by the estate prior to his appointment as personal representative. However, when the prosecutor noted that, based on Mr. Hibsman's accounting, he repaid himself $12,700 for those payments, Mr. Hibsman stated only that "That would be in error."

[¶24] Mr. Hibsman provides no argument beyond his bare assertion that there is a reasonable possibility the jury would have decided the case differently absent the Zwickl letters. We have consistently held that bald assertions, in lieu of factual presentation from the record, are not sufficient to show prejudice. *Galbreath*, ¶ 10, 346 P.3d at 20; *Sanchez v. State*, 2011 WY 77, ¶ 42, 253 P.3d 136, 148 (Wyo. 2011). The numerous unexplained discrepancies in Mr. Hibsman's accounting constitute ample evidence of Mr. Hibsman's intent to steal from his father's estate. We see no reasonable possibility that the jury would have reached a different verdict if the Zwickl letters had not been admitted into evidence. Because he has failed to demonstrate prejudice, Mr. Hibsman cannot prevail on his claim of ineffectiveness of counsel.

## II. Restitution

[¶25] In his second issue, Mr. Hibsman challenges the district court's restitution order. A sentencing court has statutory authority to "fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity." Wyo. Stat. Ann. § 7-9-103(b) (LexisNexis 2011). "Pecuniary damages" are defined in pertinent part as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event[.]" Wyo. Stat. Ann. § 7-9-101(a)(iii). We review factual challenges to district court orders awarding restitution for abuse of discretion. *Morris v. State*, 2009 WY 88, ¶ 25, 210 P.3d 1101, 1108 (Wyo. 2009). The court-ordered restitution should be supported by sufficient evidence to afford a reasonable basis for estimating the loss. *Id.*

[¶26] During sentencing, the State sought restitution for the estate in the amount of $127,208.10. In support of that request, the State relied upon the presentence investigation report and the final report and accounting submitted by Mr. Hibsman. The presentence investigation report states that "The total amount [of] restitution owed in this matter is $127,208.10." The report does not explain how that amount was calculated. During Mr. Hibsman's sentencing hearing, however, the prosecutor provided a summary of the restitution calculation. The prosecutor first subtracted the value of the estate at trial from the initial value of the estate, reaching a total of $312,043.91. After crediting Mr. Hibsman with legitimate estate expenses, the prosecutor determined the appropriate restitution amount to be $127,208.10. However, the total sought by the prosecution was

8

greater than the amounts relied upon by the prosecution to reach that total. According to the numbers provided by the prosecutor, the requested amount totaled only $118,008.10.

[¶27] The State concedes that the prosecutor's calculations were inaccurate. It contends, however, that the error was offset by the prosecutor's failure to include a $14,200 loan to the estate in the total value of the estate. According to the State, the prosecutor's miscalculations resulted in a $5,000 benefit to Mr. Hibsman. The State, however, does not request an adjustment to the district court's restitution order.

[¶28] We do not agree that the prosecution's mathematical error should be offset by the amount claimed by the State. Neither party objected to the total starting value of the estate provided in the proceedings below. Further, the State has made no showing that the district court intended to credit the estate with the loan. Consequently, considering that the error in the prosecution's restitution calculation is undisputed, we reverse the order and remand for entry of an order accurately reflecting the amounts claimed by the prosecution during Mr. Hibsman's sentencing hearing. As noted above, the amounts claimed by the prosecution totaled $118,008.10.

[¶29] Finally, Mr. Hibsman devotes a single paragraph of his brief to his claim that the district court erred by failing to award additional credit against the restitution amount for legitimate estate expenses. According to Mr. Hibsman, he is entitled to reimbursement for labor he provided in preparing the homes held by the estate for sale and for expenses incurred in traveling to Wyoming. Mr. Hibsman requests that this Court determine "what, if any, credit Mr. Hibsman should receive for the work he performed preparing the two houses for sale."

[¶30] Mr. Hibsman contended at trial that all of the expenses were legitimate. The jury obviously rejected that claim. At sentencing, Mr. Hibsman provided no new evidence supporting his claimed expenses. Absent such evidence, the court was not required to assume that those expenses were also legitimate. *See United States v. Yaker*, 87 Fed. Appx. 532, 534-35 (6th Cir. 2004). Accordingly, we are unable to conclude the district court abused its discretion by failing to award credit for additional expenses alleged by Mr. Hibsman.

### *CONCLUSION*

[¶31] We conclude that Mr. Hibsman did not receive ineffective assistance of counsel, and we affirm his conviction. However, we reverse the district court's restitution order and remand for entry of an order consistent with this opinion.

9