# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 112

**OCTOBER TERM, A.D. 2016**

**November 29, 2016**

JOSEPH SCOTT MCNAUGHTON,

Appellant
(Defendant),

v.                                                                          S-15-0118, S-16-0098

STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Emily Elliott, Student Intern. Argument by Ms. Elliott.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Joseph Scott McNaughton, challenges his conviction of conspiracy to deliver a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. §§ 35-7-1031(a)(i) and 35-7-1042 (LexisNexis 2013).   He contends he received ineffective assistance of counsel.   We affirm.

## *ISSUE*

[¶2]    Mr. McNaughton presents a single issue:

> Was Mr. McNaughton provided effective assistance of counsel?

## *FACTS*

[¶3]    Mr. McNaughton's participation in a conspiracy to deliver methamphetamine was discovered during an investigation of Preston and Ernesto Montoya by the Wyoming Division of Criminal Investigation (DCI) and the federal Drug Enforcement Administration.   The investigating agents used, among other tools, a court-authorized wiretap to record phone calls and text messages from cell phones.   During the course of the investigation, the agents intercepted communications between Mr. McNaughton and Preston Montoya regarding methamphetamine.   Based on the intercepted communications and surveillance of Mr. McNaughton and his girlfriend, Teresa Porter, DCI obtained a warrant to search Ms. Porter's residence.   Upon execution of the warrant, DCI arrested Mr. McNaughton and Ms. Porter and seized Ms. Porter's cell phone.   Ms. Porter's phone contained incriminating text messages between her and Mr. McNaughton regarding the sale of methamphetamine.

[¶4]    Mr. McNaughton was charged with one count of conspiracy to deliver a controlled substance in violation of Wyo. Stat. Ann. §§ 35-7-1031(a)(i) and 35-7-1042.   The court appointed a public defender to represent him.   After charging Mr. McNaughton, the State sent defense counsel a letter notifying counsel of the procedure for obtaining the evidence against Mr. McNaughton.   The letter informed counsel that he could provide the State a "hard drive with at least 200 GB of storage" or, in the alternative, he could arrange to view the discovery in person at the United States Attorney's Office in Casper.   Defense counsel did not provide any type of storage medium to acquire the discovery, nor did he contact anyone to arrange access to view the discovery at the U.S. Attorney's Office.

[¶5]    The State subsequently sent a formal plea offer to defense counsel.   The State proposed that, in return for Mr. McNaughton's guilty plea to the felony conspiracy charge, the State would agree to recommend a sentence of five to eight years in prison. Mr. McNaughton rejected the plea offer, and the State did not present any subsequent

offers.

[¶6]     Following Mr. McNaughton's rejection, defense counsel filed a motion for a bill of particulars. In response, the State asserted that the motion was untimely and that the information and accompanying affidavit adequately apprised Mr. McNaughton of the allegations against him. The State also noted that its evidence against Mr. McNaughton had been made available to him. The district court did not rule on the motion prior to trial.

[¶7]     Several days before trial, the State provided a hard drive to defense counsel containing the incriminating evidence against Mr. McNaughton. On the morning of the first day of trial, defense counsel requested a ruling on his motion for a bill of particulars. In the ensuing colloquy with the court, counsel admitted that he had not listened to all of the evidence provided by the State:

> I don't know how many phone calls are on that thing. I sometimes say 18,000 phone calls. It's something like that. I don't have time as a Public Defender to listen to every one of those phone calls and go through those things. And so I didn't read all of those things. So if minimum representation in a case like this is you have got to listen to every phone call on that terabyte drive, that hasn't happened.

The district court denied the motion, concluding that the charging document and the accompanying affidavit provided a sufficient description of the charge.

[¶8]     During trial, the State presented evidence of phone and text conversations tending to incriminate Mr. McNaughton. Following trial, the jury found Mr. McNaughton guilty of conspiracy. On February 25, 2015, the district court sentenced him to not less than four years nor more than eight years in prison. In rendering its decision, the court concluded that, in light of Mr. McNaughton's prior felonies and his history of probation violations, probation was not an appropriate sentence. Mr. McNaughton appealed his conviction and sentence, and the appeal was docketed in this Court as S-15-0118.

[¶9]     In November 2015, Mr. McNaughton filed a motion for a new trial asserting that defense counsel was ineffective for failing "to investigate and review discovery," failing to "thoroughly research the controlling law," and failing to "request a continuance on the basis of his inability to review the large amount of discovery." The court held a hearing on the motion and heard testimony from Mr. McNaughton, his trial counsel, and the prosecutor. Defense counsel admitted that he had not reviewed all of the material provided by the State. He indicated, however, that Mr. McNaughton would only enter a plea bargain if the State agreed to reduce the charge against him to a misdemeanor.

2

[¶10]  The district court denied the motion for a new trial.  The court addressed only the issue of prejudice, holding that Mr. McNaughton had not established that he was prejudiced by his counsel's performance during plea negotiations.  The district court concluded that "any claimed prejudice in that regard is simply speculative."  The court did not find any credible evidence that the State ever made a plea offer for probation or that the sentencing court would have accepted the State's recommendation for probation.  Mr. McNaughton filed a second appeal, which was docketed in this Court as S-16-0098.  We consolidated the cases for purposes of argument and decision.

## *DISCUSSION*

[¶11]  In his only issue, Mr. McNaughton claims he received ineffective assistance of counsel.  Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*.  *Hibsman v. State*, 2015 WY 122, ¶ 14, 355 P.3d 1240, 1244 (Wyo. 2015).

[¶12]  In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate, first, that trial counsel's performance was deficient and, second, that the deficient performance caused prejudice to the defense.  *Rodriguez v. State*, 2010 WY 170, ¶ 14, 245 P.3d 818, 823 (Wyo. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  The failure to make the required showing of either deficient performance or prejudice will result in a finding that counsel was not ineffective.  *Osborne v. State*, 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012).

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Sen v. State*, 2013 WY 47, ¶ 39, 301 P.3d 106, 121 (Wyo. 2013) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069).

[¶13]  Mr. McNaughton contends his counsel was ineffective because he "was under the mistaken understanding that the State did not have much, if any, evidence which would establish this conspiracy."  He claims his counsel was deficient for failing to review all of the evidence against him.  According to Mr. McNaughton, his counsel's failure to review the evidence or to request a continuance prevented him from entering a more favorable plea agreement.  He characterizes the evidence as "overwhelming," and asserts that his counsel should have more aggressively pursued a plea bargain.  According to Mr. McNaughton, he was prejudiced by his counsel's performance because "a skilled

3

criminal defense advocate would likely be able to secure a more favorable agreement than was obtained in his current sentence."

[¶14] We find it unnecessary to address the deficiency prong of the ineffectiveness standard because Mr. McNaughton has not established he was prejudiced by counsel's alleged deficient performance. *See Pendleton v. State*, 2008 WY 36, ¶ 21, 180 P.3d 212, 219 (Wyo. 2008); *Bloomer v. State*, 2010 WY 88, ¶ 19, 233 P.3d 971, 976 (Wyo. 2010). In order to establish prejudice, the defendant must demonstrate a reasonable probability that, absent the deficient performance of counsel, the outcome of his trial would have been different. *Galbreath v. State*, 2015 WY 49, ¶ 10, 346 P.3d 16, 20 (Wyo. 2015). Mr. McNaughton's claim that a more favorable plea agreement could have been obtained, however, is unsupported by the record in this case.

[¶15] Mr. McNaughton points to statements by trial counsel indicating that he would have more aggressively pursued a plea deal had he been aware of the evidence against Mr. McNaughton. For example, counsel stated that if he had been aware of the text messages between Mr. McNaughton and Ms. Porter, he "probably would have changed the attitude about negotiating with [the prosecution]." However, there is no indication in the record that the State would have offered a plea bargain that was more favorable than the sentence Mr. McNaughton received after trial, or that was acceptable to Mr. McNaughton or to the district court. In fact, the evidence in the record indicates otherwise.

[¶16] At the hearing on the motion for a new trial, Mr. McNaughton stated that "if there was probation on the table, I would have considered that." He testified he was intent on going to trial unless he received an offer to plead to a misdemeanor, resulting in probation but no jail time. He acknowledged that he was very interested in going to trial from the beginning of the case because he was "real adamant" about facing his accusers. When asked what prevented him from taking the State's plea offer, Mr. McNaughton testified:

> I wanted to find out, like, in [the] affidavit [supporting the State's charging document], who CS8 [confidential source 8] was, [who] gave firsthand information about me. That's what they – the charging document, the affidavit said CS8 gave firsthand knowledge of Joseph McNaughton. I still haven't found out who that person is. And that's pretty much my biggest issue. I wanted to find out what they had against me and who was saying what about me.

[¶17] Defense counsel testified that there was some discussion with the prosecution about a second plea offer. According to defense counsel, the State offered that "if Mr. McNaughton . . . would plead guilty to selling marijuana, [the State] would be

4

willing to recommend probation if Mr. McNaughton was willing to address his drug problem via drug treatment." However, defense counsel acknowledged there had never been a written offer to that effect. When the prosecutor was questioned about whether there had been an offer to recommend probation, he testified that no such offer was made or considered:

> There was never any offer made to that effect; but there was a discussion that we did have at one point. And I specifically remember [defense counsel] sitting down with me in our conference room at the DA's office. And I started that conversation with a premise that we're not making any offers here. I would just like to get some idea as to whether your client is interested in any other parameters. I think this was after he had already said, you know, he wouldn't take anything other than a misdemeanor. Now, we made it clear we were just having a discussion; we were not making any offers.

After noting that Mr. McNaughton had been out of prison for less than a year at the time of his arrest and that he had not cooperated with law enforcement in their investigation of the conspiracy, the prosecutor testified that "I wouldn't be doing my job if I would have made an offer of a misdemeanor given . . . what was going on with this case." The prosecutor stated that the lowest offer the State would have presented was four to eight years, which is what Mr. McNaughton received after trial:

> I made a note on the file, I could come off the five to eight maybe a little bit but not much. And as I recall, [the lead DCI agent] and I, we talked about, you know, maybe we would do a four to eight, but we certainly were not ever talking about plea negotiations involving time served, misdemeanors, or anything close to that.

[¶18] Further, there is no indication in the record that the district court would have accepted a plea agreement on the terms sought by Mr. McNaughton. According to the prosecutor, "the likelihood of a judge taking that offer [of probation] was virtually nil for a guy that just got out of prison." The prosecutor's testimony is supported by the sentencing court's statements at the sentencing hearing. In that hearing, the court concluded that, in light of Mr. McNaughton's prior felonies and "history of multiple probation and parole revocations," probation was not an appropriate sentence.

[¶19] Considering the testimony of Mr. McNaughton, his defense counsel, and the prosecutor, the district court determined that, with respect to the issue of whether Mr. McNaughton was prejudiced during plea negotiations, "it doesn't take much to find

that any claimed prejudice in that regard is simply speculative." The court concluded:

> Ultimately, having considered the testimony of those three witnesses, I am not able to find any credible evidence that there was an offer of probation made to the defendant or that any such offer would have been made to the defendant nor necessarily that he would have accepted such an offer even if it had been made. It's convenient for the defendant to testify to that now; however, there's certainly other evidence in the record that the defendant was not interested in taking much of a plea offer and was fairly committed to going to trial. . . .
>
> That argument also doesn't account for the Court's role in the plea agreement process and in sentencing. Any agreement along those lines would need to be submitted to the Court for approval, and there is no evidence that the Court would have accepted such an agreement. In fact, I would submit that one could reasonably infer based on the sentence the Court did impose, finding that probation was not appropriate under no restriction of a plea agreement and having stated the reasons therefor during sentencing, that one could reasonably infer that that would not have happened.

We agree with the district court.

[¶20] Mr. McNaughton cites the Supreme Court's opinion in *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) to support his claim that he was prejudiced by his counsel's performance. In that case, however, the appellant rejected the prosecution's plea offer and, unlike the present case, he received a less favorable outcome after trial. The Court stated that a defendant must prove several facts, including that the plea offer's terms would have been more favorable than the outcome after trial, in order to demonstrate prejudice:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

6

*Id.*, 132 S.Ct. at 1385. The Court indicated that the severity of the sentence after trial was integral to its holding that the appellant was prejudiced by his counsel's deficient performance:

> In the instant case respondent went to trial rather than accept a plea deal, and it is conceded this was the result of ineffective assistance during the plea negotiation process. Respondent received a more severe sentence at trial, one 3½ times more severe than he likely would have received by pleading guilty. Far from curing the error, the trial caused the injury from the error. Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.

*Id.*, 132 S.Ct. at 1386.

[¶21] In the present case, there was no plea offer made that was more favorable than the sentence Mr. McNaughton ultimately received. Further, Mr. McNaughton has not demonstrated that the State would have offered a plea bargain that was more favorable than the sentence he received after trial, or that was acceptable to him or to the district court. He has not shown that he was prejudiced by his counsel's performance. As a result, we are unable to conclude he received ineffective assistance of counsel.

[¶22] Affirmed.