# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 110

### APRIL TERM, A.D. 2020

### August 25, 2020

JOSHUA J. LEWIS,

Appellant
(Defendant),

v.                                                S-18-0258, S-20-0025

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*

> *Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel. Argument by Mr. Bennett.*

*Representing Appellee:*

> *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Darrell D. Jackson, Director, Mackenzie Morrison, Student Director, and Christian D. Ryan, Student Intern, Prosecution Assistance Program, University of Wyoming, College of Law. Argument by Mr. Ryan.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A jury convicted Joshua Lewis of aggravated assault and battery and found him subject to Wyo. Stat. Ann. § 6-10-201's habitual criminal sentencing enhancement.  The district court imposed the mandatory life sentence required by the sentencing enhancement.  Mr. Lewis filed a W.R.A.P. 21 motion for a new trial, arguing that he had received ineffective assistance of counsel.  Mr. Lewis asserted that, had his trial counsel effectively communicated to him that a life sentence would be mandatory upon conviction, he would have accepted the State's plea offer of 27 to 30 years imprisonment.  The district court concluded Mr. Lewis did not receive ineffective assistance of counsel and denied his Rule 21 motion.  We affirm.

## ISSUE

[¶2]   Did the district court err by denying Mr. Lewis' motion for a new trial based on ineffective assistance of counsel?

## FACTS

[¶3]   Mr. Lewis stabbed Nicholas Thompson in the abdomen outside the Fireside bar in Gillette, Wyoming.  The two did not know each other, nor did any of their companions, and no witnesses reported any sort of altercation between them.  Mr. Lewis simply walked up to Mr. Thompson and pulled him in for what looked like a "bro hug."  When Mr. Lewis pulled away, Mr. Thompson realized he had been stabbed.  Mr. Thompson told a coworker who had entered the bar just ahead of him that he had been stabbed, and someone called the police while Mr. Thompson sat down in a booth near the door.

[¶4]   Meanwhile, Mr. Lewis and his two friends, Nathaniel Lunen and Allison "Russia" Klueber,[1] hurried back to their vehicle.  Officer Jeremy Traverse pulled the group over shortly after they left the Fireside parking lot and ordered them out of the vehicle.  Officer Traverse found a folding knife on the floor of the vehicle with what "appeared to be some sort of sheen on it."

[¶5]   The State charged Mr. Lewis with one count of aggravated assault and battery and sought a habitual criminal sentencing enhancement under Wyo. Stat. Ann. § 6-10-201, which states:

> (a)   A person is an habitual criminal if:
>
> (i)   He is convicted of a violent felony; and

---

[1] Ms. Klueber is from Russia, and is referred to in the record as "Russia" or "Ally."

1

(ii)    He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

(b)    An habitual criminal shall be punished by imprisonment for:

(i)    Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;

(ii)    Life, if he has three (3) or more previous convictions for offenses committed after the person reached the age of eighteen (18) years of age.

(LexisNexis 2019).  The State alleged that Mr. Lewis had three or more previous felony convictions and, thus, qualified for a mandatory life sentence if convicted.

[¶6]    Before trial, Mr. Lewis filed a Motion Requesting Reduced Enhancement, arguing that he was not eligible for the sentencing enhancement because two of his prior felony charges "were resolved as part of the same written plea agreement" and, thus, had not been "separately brought and tried."  The State responded that the enhancement applied to Mr. Lewis, regardless of the plea agreement, because the "previous felony convictions arose from separate conduct occurring months apart; had been charged separately in different informations; resulted in separate sentences; and would have been tried in separate trials if [Mr. Lewis] had not plead guilty."  The district court denied Mr. Lewis' motion, concluding that he was subject to the enhancement under Wyo. Stat. Ann. § 6-10-201(b)(ii).

[¶7]    In exchange for a guilty plea, the State offered to seek the lesser sentencing enhancement under Wyo. Stat. Ann. § 6-10-201(b)(i) and to recommend a sentence of 27 to 30 years imprisonment.  Mr. Lewis rejected the offer, and the case proceeded to trial. The jury convicted Mr. Lewis of aggravated assault and battery and found that he had previously been convicted of three felonies, thus qualifying for the habitual criminal enhancement under Wyo. Stat. Ann. § 6-10-201(b)(ii).  Before sentencing, Mr. Lewis personally sent the district court several letters requesting leniency.  At sentencing, the district court explained that the habitual criminal statute is "obligatory" and that it had no discretion to impose any sentence other than life imprisonment.  Thus, the court sentenced Mr. Lewis to a term of life.

2

[¶8]   Mr. Lewis filed a notice of appeal and, later, a motion for new trial based on ineffective assistance of counsel under W.R.A.P. 21.[2]  Mr. Lewis argued that he had been "deprived of the effective assistance of counsel because his trial attorney failed to ensure that [he] understood the nature of the charge and potential punishment against him as well as the functioning of the enhanced sentencing scheme for a habitual criminal."  He asserted that "[b]ut for trial counsel's deficient performance in explaining the risk of rejecting a plea agreement, [he] would not have gone to trial."  This Court stayed the briefing in Mr. Lewis' appeal pending resolution of the motion.

[¶9]   At the Rule 21 hearing, Mr. Lewis' trial counsel testified that he had discussed the sentencing enhancement with Mr. Lewis "at great length" and that he "urged him to accept the plea bargain, and [Mr. Lewis] declined to do so on several occasions."  He explained to Mr. Lewis that it was "very, very, very risky" to reject the plea because the "offer would allow him to avoid the possibility . . . of a life sentence."  When Mr. Lewis told his counsel that the judge would make the final decision on his sentence, counsel corrected him, saying "that if we have a habitual offender, . . . the Judge essentially has . . . no discretion."  His attorney further testified that Mr. Lewis believed the sentencing enhancement did not apply to him and that this belief did not change even after he explained the court's ruling to him.  According to his counsel, after the court denied the Motion Requesting Reduced Enhancement, Mr. Lewis' focus shifted to whether "the State had enough evidence to convict him."  In particular, Mr. Lewis

> seemed to focus more on Ms. Klueber, one of the State's witnesses that the State was having a lot of trouble - - they couldn't find her at first, and she was expressing some reluctance to testify and there [were] some doubts about what she would say and he seemed to focus more on hopes that Ms. Klueber's testimony would exonerate him in some way.

---

[2] W.R.A.P. 21 states:

> (a)      Following the docketing of a direct criminal appeal, the appellant may file, in the trial court, a motion claiming ineffective assistance of trial counsel.  The motion may be used to seek a new trial or to seek plea withdrawal. . . . The motion shall contain nonspeculative allegations of facts which, if true, could support a determination that counsel's representation was deficient and prejudiced the appellant. . . .
>
> . . . .
>
> (e)      If trial court denies the motion, appellant may file a notice of appeal to challenge the trial court's order denying the motion.  When such an appeal is docketed in the appellate court, that appeal shall be consolidated with the initial direct appeal. . . .

Finally, his counsel felt confident that Mr. Lewis was competent throughout the proceedings and "seemed to be fully capable" of understanding them.

[¶10] Dr. Amanda Turlington, a clinical psychologist who evaluated Mr. Lewis at his request, testified that Mr. Lewis had cognitive limitations resulting in "his failure to truly understand many aspects of [his criminal proceedings], including but not limited to enhancements which supported a life sentence in prison." She also testified that Mr. Lewis continued to believe that the sentencing enhancement did not apply to him and that he was "upset about having been convicted based upon the evidence that was presented at trial," which he believed was insufficient.

[¶11] Mr. Lewis also testified. He explained how he interpreted the sentencing enhancement and that he still believed it did not apply to him. He acknowledged that his counsel had told him his interpretation of the enhancement was incorrect and that he had seen the court's order denying his request to reduce the enhancement. However, he asserted that he "was never told it was [a] mandatory life sentence" and that his belief that the judge could impose a lesser sentence was a factor in his decision to reject the plea offer. Finally, he testified that he had understood the proceedings and had never been incompetent.

[¶12] Nevertheless, at the Rule 21 hearing, Mr. Lewis asserted that trial counsel had failed to take his cognitive limitations into account when advising him whether he should accept the State's plea offer. In response, the State introduced evidence suggesting that Mr. Lewis rejected the plea agreement because he believed he would not be convicted, not because of a misunderstanding about the sentencing enhancement. For example, Mr. Lewis wrote numerous emails while in the Campbell County Detention Center expressing the belief that the State did not have enough evidence to convict him:

- April 21, 2018 email to Marissa Bloom: "my lawyer came up here and said that the knife they found in my car did not have any blood on it[,] sooo technically they dont even got a weapon anymore . . . ."

- April 21, 2018 email to Ashley Benefiet: "my lawyer came up the knife they found in my car had no blood on it soo now they dont got a weapon, good news . . . ."

- April 21, 2018 email to Alyssa Orcutt: "guess the knife they found in the car had no blood on it[,] sooo now they have no weapon soo its looking better by the day . . . ."

- April 22, 2018 email to Christina Poppleton: "hey my lawyer came yesterday said that the knife they found didnt have any

4

blood on it sooo now they dont even got a weapon[,] soo its looking like i might beat this at jury trial if it goes that far if ally dont show up then they dont got a witness either . . . ."

- May 11, 2018 email to Jess Black: "got jury trial here soon might be released[,] they dont even got a weapon soo if i get released i am bouncing . . . ."

- May 16, 2018 email to Jess Black: "i might be out here soon they dont even got a weapon anymore[,] sooo taken it to jury trial . . . ."

- May 29, 2018 email to Jess Black: "hopefully ill be out here sooon they dont even got a weapon anymore soooo thats good . . . ."

[¶13]  Mr. Lewis also discussed the State's lack of evidence in a video-recorded visit with a man named Stuart Lindahl.  Mr. Lewis told Mr. Lindahl there was no blood on the knife found in his car and stated, "sounds like to me we should probably go to trial then." He repeatedly stated that "they don't have nothin."  He also told Mr. Lindahl about Ms. Klueber, saying that she was the only possible evidence against him and that he had told a friend to "do what you gotta do to make Russia not show up" and that he just needed her to "keep [her] f***ing mouth shut."[3]

[¶14]  Dr. Katherine Mahaffey, a forensic examiner for the Wyoming State Hospital, also performed a series of tests on Mr. Lewis to evaluate his competency.  She did not agree with Dr. Turlington's assessment of Mr. Lewis, instead testifying that "[h]is tests only indicate[d] that he[] function[ed] at an average level."  During her evaluation, Mr. Lewis stated that he believed the State lacked evidence and that was why he had gone to trial. Dr. Mahaffey agreed that Mr. Lewis did not think the sentencing enhancement applied to him but opined that it was not because of an inability to understand the habitual criminal statute.  Rather,

---

[3] Although the State subpoenaed Mr. Lunen and Ms. Klueber for trial, it had difficulty securing their appearances.  Before trial, the State gave notice of its intent to introduce Mr. Lunen and Ms. Klueber's out-of-court statements under W.R.E. 804(b)(7), which provides an exception to the prohibition against hearsay when a statement is "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."  The district court held a hearing and found "by clear and convincing evidence that [Mr. Lewis], by his wrongdoing, procured the absence of" Mr. Lunen and Ms. Klueber and, thus, that the State could introduce their out-of-court statements.  During the second day of trial, Ms. Klueber unexpectedly appeared and testified; thus, her out-of-court statements were not introduced.  Mr. Lunen failed to appear, and a video recording of his conversation with an officer was admitted at trial.

he doesn't feel that it applies to him [because] he [previously] did two years, he's looking at guys that have done 20, 40 years. He doesn't see himself in the same boat as [] those guys. He doesn't see himself as bad as those guys, so emotionally he's, like, Hey, this isn't fair, it's not me.

[¶15] The district court denied Mr. Lewis' Rule 21 motion. The court found that "[w]hile [Mr. Lewis] may not have understood that a life sentence would be mandatory if he was convicted and if the jury determined he had three prior felony convictions, he was aware a life sentence was possible." The court "had [no] concern . . . as to [Mr. Lewis'] competence," based on its own experience with Mr. Lewis, his counsel's testimony, and Dr. Mahaffey's testimony and conclusions, which it found "to be far more credible than those of Dr. Turlington." Moreover, the court was "convinced [Mr. Lewis] did not accept the State's offered plea agreement . . . because he was confident the State did not have enough evidence to convict him of the aggravated assault and battery," citing Mr. Lewis' various emails; the video-recorded visit with Mr. Lindahl; and his counsel's testimony that Mr. Lewis' "primary consideration in taking his case to jury trial was not the habitual offender issue, but his belief that the State had insufficient evidence to convict him." The court concluded that Mr. Lewis' counsel had not performed deficiently:

> The fact that [Mr. Lewis] made a bad decision in taking his case to jury trial does not, in this instance, automatically indicate his decision was "uninformed" or that [he] is incompetent. Certainly, criminal defendants make decisions frequently that do not prove to be in their own best interests, even while fully understanding the ramifications of such. The court is convinced [Mr. Lewis] was fully aware of the gamble he made in taking his case to jury trial. He expected to win and was mistaken.

Mr. Lewis timely appealed the ruling on his Rule 21 motion. We consolidated his appeals and lifted the stay on briefing.

### STANDARD OF REVIEW

[¶16] "Claims of ineffective assistance of counsel involve mixed questions of law and fact." *Pickering v. State*, 2020 WY 66, ¶ 58, 464 P.3d 236, 256 (Wyo. 2020).

> We review the district court's conclusions of law de novo and defer to its factual findings unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

6

*Byerly v. State*, 2019 WY 130, ¶ 66, 455 P.3d 232, 250 (Wyo. 2019) (quoting *Wall v. State*, 2019 WY 2, ¶ 38, 432 P.3d 516, 527 (Wyo. 2019)) (citations and quotation marks omitted).

## *DISCUSSION*

[¶17] Mr. Lewis argues that his trial counsel did not communicate with him in a manner that enabled him to fully understand he was facing a life sentence, considering his "barely average academic ability." He asserts that this deficiency fell below the standard of professional conduct requiring an attorney to explain matters "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation[.]" W.R.P.C. 1.4(b). He claims the record supports "that his faulty understanding of the Habitual Criminal statute influenced his decision not to take the plea agreement." The State counters that the record demonstrates that trial counsel adequately "communicated the potential life sentence with [Mr.] Lewis on multiple occasions." Alternatively, it asserts that Mr. Lewis cannot establish prejudice because he did not "decline[] the plea offer due to counsel's advice."

[¶18] To succeed on his ineffective assistance of counsel claim, Mr. Lewis must show that his trial attorney's performance was deficient, and that the deficient performance prejudiced his defense. *McNaughton v. State*, 2016 WY 112, ¶ 12, 384 P.3d 276, 278 (Wyo. 2016). The deficient performance prong requires Mr. Lewis to show that his attorney's performance "was substantially below that of a reasonably competent attorney." *Byerly*, 2019 WY 130, ¶ 67, 455 P.3d at 250. To establish prejudice, Mr. Lewis must demonstrate that, absent the deficiency, a reasonable probability exists that he would have enjoyed a more favorable outcome. *Id.* "Because a defendant must establish both prongs, a court can decide an ineffective assistance claim on the prejudice prong without considering the deficient performance prong." *Larkins v. State*, 2018 WY 122, ¶ 62, 429 P.3d 28, 43-44 (Wyo. 2018).

[¶19] We need not address whether counsel performed deficiently because Mr. Lewis has failed to establish prejudice. *Id.* When a defendant claims prejudice based on his rejection of a plea offer, he

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

7

*McNaughton*, 2016 WY 112, ¶ 20, 384 P.3d at 280 (quoting *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012)).

[¶20]   Mr. Lewis attempts to avoid this test by distinguishing *McNaughton*.   There, the State offered to recommend a sentence of five to eight years in exchange for a guilty plea. *Id.* at ¶ 5, 384 P.3d at 277.   Mr. McNaughton rejected the offer, the jury convicted him, and the district court sentenced him to four to eight years in prison.  *Id.* at ¶ 8, 384 P.3d at 278.   On appeal, Mr. McNaughton argued that trial counsel failed to thoroughly review discovery, leading to "the mistaken understanding that the State did not have much, if any, evidence" against him.  *Id.* at ¶ 13, 384 P.3d at 278.   This failure, Mr. McNaughton asserted, "prevented him from entering a more favorable plea agreement."  *Id.*  Mr. Lewis points out that Mr. McNaughton could not meet the prejudice prong because he "ultimately received a sentence less than the offered plea agreement."   In contrast, Mr. Lewis' life sentence is greater than the State's offered 27-to-30-year sentencing recommendation.

[¶21]   Mr. Lewis' argument ignores that our prejudice analysis in *McNaughton* also relied on evidence in the record that Mr. McNaughton was "not interested in taking much of a plea offer."  *Id.* at ¶¶ 16, 19, 384 P.3d at 279-80.   Mr. McNaughton testified that "he was intent on going to trial unless he received an offer to plead to a misdemeanor, resulting in probation but no jail time."[4]   *Id.* at ¶ 16, 384 P.3d at 279.   He also "acknowledged that he was very interested in going to trial from the beginning of the case because he was 'real adamant' about facing his accusers."  *Id.*  Similarly, the record here is replete with evidence that Mr. Lewis was intent on going to trial.   The district court apparently did not credit Mr. Lewis' evidence that a mistaken belief about the sentencing enhancement influenced his decision to reject the State's plea offer.   Instead, it was "convinced" that Mr. Lewis rejected the offer "because he was confident the State did not have enough evidence to convict him of the aggravated assault and battery."   That determination is not clearly erroneous, and we will not second guess it on appeal.   Thus, Mr. Lewis has failed to establish prejudice, and we cannot conclude he received ineffective assistance of counsel.

[¶22]   Affirmed.

---

[4] In *McNaughton*, the prosecution testified that it would not have made such an offer, instead saying "the lowest offer [it] would have presented was four to eight years."  *Id.* at ¶ 17, 384 P.3d at 279-80.   Here, Mr. Lewis testified that he might have accepted an offer of 10 to 20 or 15 to 20 years.   However, he presented no evidence that the State would have made such an offer, and his trial counsel testified that he was "confident that [] any kind of counteroffer that would result in a significantly lower sentence [than 27 to 30 years] would have been rejected by the State."  *See Jones v. State*, 2010 WY 44, ¶ 19, 228 P.3d 867, 873 (Wyo. 2010) ("The burden of proving that counsel was ineffective rests entirely on an appellant.").