# IN THE SUPREME COURT, STATE OF WYOMING

# 2019 WY 113

### OCTOBER TERM, A.D. 2019

November 7, 2019

SEAN WAYNE WESTON,

Appellant
(Defendant),

v.

S-19-0015

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellant:*
Office of the Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel. Argument by Ms. Wilson.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Russell Farr, Senior Assistant Attorney General. Argument by Mr. Farr.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ**, Justice.

[¶1]    A jury found Sean Wayne Weston guilty of attempted sexual abuse of a minor in the second degree.  Mr. Weston challenges the sufficiency of the evidence to convict him, the jury instructions and the effectiveness of his trial counsel.  Our review of the record convinces us the evidence was sufficient to support the jury's verdict.  The jury instructions on the elements of attempted sexual abuse of a minor in the second degree were incorrect.  However, the jury instruction errors and any deficiencies in defense counsel's performance associated with the instructions were not prejudicial because the State presented overwhelming evidence showing Mr. Weston was guilty of the crime.  We affirm.

## ISSUES

[¶2]    The issues on appeal are:

1.  Was the evidence presented at trial sufficient to convict Mr. Weston of attempted sexual abuse of a minor in the second degree?

2.  Did the district court err in instructing the jury?

3.  Was defense counsel's performance  in addressing the jury instructions deficient?

4.  Was Mr. Weston prejudiced by incorrect jury instructions and/or his counsel's deficient performance?

## FACTS

[¶3]    In the spring of 2015, Mr. Weston, who was 29 years old, and the victim, who was 15 years old, met briefly at the recreation center in Evanston, Wyoming.  After they met, Mr. Weston messaged the victim on Facebook and they began communicating regularly through that platform.  The Facebook messages were admitted at trial as State's Exhibit No. 1.  The messages were sexually explicit, and we do not need to repeat them verbatim here.  It suffices to say Mr. Weston graphically described the sexual activities he wished to perform with the victim and stated many times that he wanted to have sexual intercourse and oral sex with her.

[¶4]    Mr. Weston also frequently encouraged the victim to sneak out of her house, go for a walk, or be dropped off at certain places so he could pick her up and take her to his house without her parents knowing.  At one point, he asked where she lived, and she said across the street from the Pines Apartments.  He said she should "walk over to the Pines" and he would come and get her.

1

[¶5]    On June 24, 2015, Mr. Weston and the victim's plans became more concrete. Mr. Weston asked the victim if she would sneak out that night, and she said she would "soon" but had to wait until the other people in her house were asleep. Mr. Weston responded, "Sweet. I'm going to take a shower" and "[l]et me know when to get you." He messaged her a little later saying he was out of the shower; the victim responded, "Same." Mr. Weston asked her, "So how long, baby?" and told her to "[j]ust hurry and sneak out[.]"

[¶6]    The victim eventually told Mr. Weston that everyone was asleep, and he responded, "So the Pines?" The victim said, "Wait, don't leave yet" because she was "talking to the cops" about whether she had been involved in a burglary at the Flying J. The victim testified at trial that her statements about the cops were untrue; she was just "trying to figure out a way to get out of" meeting Mr. Weston.

[¶7]    Mr. Weston said, "Okay. Then I'll go home, I guess." The victim asked, "Are you already at the Pines?" and he replied, "No." She asked, "Then where are you?" and he said, "Driving. Are you coming out still?" The victim responded, "Yeah, if the cops ever leave." He responded, "Let me know." Mr. Weston and the victim did not meet in person that night but, over the next several weeks, they continued to communicate in great detail about having sexual intercourse and oral sex. Mr. Weston regularly encouraged the victim to sneak away from her parents and come to his house.

[¶8]    The victim testified that on July 26, 2015, she and Mr. Weston Facebook messaged and texted each other.[1] Mr. Weston told her he was going to take his son to the park by her house. He said she should go for a walk and he would pick her up. There was some discussion indicating they wanted to make sure the victim's family did not know about them being together. The victim mentioned that her younger cousin was with her and asked if Mr. Weston would be "weirded out" if she and her cousin went to the park and laid in the grass. He said, "No, I wouldn't care. Free country."

[¶9]    The two girls went to the park, and Mr. Weston and the victim continued to communicate with one another at the park through text and Facebook messaging. The victim said she and Mr. Weston were about fifteen to twenty feet apart at the park, but they did not speak. Mr. Weston messaged her, saying she was turning him on in her pink shorts and asked if her cousin could watch his son so Mr. Weston and the victim could go "mess around" in his truck. He also said the victim should go on a walk at 5:00 p.m. so he could pick her up.

[¶10]   The victim never met with Mr. Weston, and she testified their communication ended when she was sent to a residential youth treatment center. The victim did not report her

---

[1] The victim said that, in addition to messaging each other on Facebook, she and Mr. Weston communicated by texting on their phones. Mr. Weston denied that they communicated by text, and the text messages were not available at trial because the victim no longer had the phone or a record of the text messages.

2

interactions with Mr. Weston to law enforcement, but officers found their Facebook messages when investigating another matter involving Mr. Weston. The State charged Mr. Weston with attempted second-degree sexual abuse of the victim, and the jury found him guilty. The district court sentenced him to a prison term of eighteen months to five years, and Mr. Weston appealed.

## DISCUSSION

### <u>Sufficiency of the Evidence</u>

[¶11] Mr. Weston asserts the trial evidence was insufficient to convict him of attempted second-degree sexual abuse of a minor. When reviewing a claim that the trial evidence was insufficient to support a jury's verdict, we do not consider whether the evidence was sufficient to establish the appellant's guilt beyond a reasonable doubt. *Thompson v. State,* 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018); *Mraz v. State,* 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016). Rather, we evaluate whether the evidence could reasonably support the jury's verdict without reweighing the evidence or re-examining the credibility of the witnesses. *Id.*

> [T]his Court examines the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence.

*Id.* (quoting *Worley v. State,* 2017 WY 3, ¶ 17, 386 P.3d 765, 771 (Wyo. 2017)) (other citations omitted).

[¶12] Mr. Weston was convicted of attempted second-degree sexual abuse of a minor under Wyo. Stat. Ann. §§ 6-1-301 and 6-2-315 (a)(i) and (b) (LexisNexis 2019). Section 6-1-301 states in relevant part:

> (a) A person is guilty of an attempt to commit a crime if:
>
> (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

Section 6-2-315(a)(i) states in relevant part:

3

(a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if:

(i) Being seventeen (17) years of age or older, the actor inflicts sexual intrusion on a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor[.]

Sexual intrusion is defined as:

(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or

(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

Wyo. Stat. Ann. § 6-2-301(a)(vii) (LexisNexis 2019).

[¶13] Mr. Weston concedes the dates and location of the offense, his and the victim's ages, and that he sent and received the Facebook messages which were the primary evidence against him. He claims, however, the State presented insufficient evidence to establish he had the requisite intent to commit second-degree sexual abuse of a minor or that he took a substantial step to complete the crime.

[¶14] To prove an attempt to commit a crime, the State must show the defendant had the specific intent to complete the crime and took a substantial step to achieve that result. *Pearson v. State,* 2017 WY 19, ¶¶ 19-20, 389 P.3d 794, 798-99 (Wyo. 2017). *See also, Compton v. State,* 931 P.2d 936, 941 (Wyo. 1997) (the State was required to prove the defendant had the intent to perform acts which, if accomplished, would constitute the charged crime and he acted on that intent but was unsuccessful in completing the crime). Stated somewhat differently,

[t]he elements of the crime of attempt are: 1) an intent to do an act or bring about certain consequences which would in law amount to a crime; and 2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation.

4

*Adams v. State,* 2005 WY 94, ¶ 13, 117 P.3d 1210, 1215 (Wyo. 2005) (citing *Compton,* 931 P.2d at 940).

[¶15]  In this case, the State was required to prove Mr. Weston had the specific intent to inflict sexual intrusion on the victim and he did an act which was a substantial step toward achieving that result.  The evidence of Mr. Weston's actions on June 24, 2015, was sufficient to establish both elements of the crime.  In the days leading up to June 24, 2015, Mr. Weston spoke in extremely graphic detail about his desire to have sexual intercourse and oral sex with the victim.  Those acts meet the statutory definition of sexual intrusion, which includes "[s]exual intercourse, cunnilingus, [and] fellatio."[2]  Section 6-2-301(a)(vii)(B).  Mr. Weston continually urged the victim to sneak out of her house, take a walk, or be dropped off at certain places so he could pick her up, take her to his house, and have sex with her.  Mr. Weston also emphasized they needed to keep their relationship a secret, even telling the victim to delete their conversations from her electronic devices when she said the cops were after her.  The discussion between Mr. Weston and the victim showed he had the specific intent to inflict sexual intrusion upon her.

[¶16]  Substantial step, as defined by statute, is "conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]"  Section 6-1-301(a)(i).  The defendant's conduct must amount to more than mere preparation.  *Adams,* ¶ 13, 117 P.3d at 1215; *Compton,* 931 P.2d at 940.  As to whether the evidence was sufficient to establish Mr. Weston took a substantial step in furtherance of his intent, *Gentilini v. State,* 2010 WY 74, ¶ 1, 231 P.3d 1280, 1282 (Wyo. 2010), is informative.  We upheld Mr. Gentilini's conviction for attempted first-degree murder against a challenge that the evidence was insufficient to establish he took a substantial step to complete the crime.  *Id.,* ¶ 8, 231 P.3d at 1283.  The evidence showed that, after an altercation with the victim, Mr. Gentilini retrieved a loaded gun and drove toward the victim's location.  *Id.,* ¶ 13, 231 P.3d at 1284.  These actions, together with his stated intention to kill the victim, were sufficient to prove he took a substantial step to complete the murder.  *Id.,* ¶ 15, 231 P.3d at 1285.  We explained, "'[w]hen the intent to commit murder is clearly shown, slight acts in furtherance thereof will constitute an attempt to

---

[2] Mr. Weston claims the evidence did not show "'how far' [he] actually intended to go sexually with the victim[.]"  He asserts, therefore, the evidence did not establish he intended to commit second-degree sexual abuse of a minor, which requires sexual intrusion, rather than third-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-316(a)(i) (LexisNexis 2019), which requires sexual contact.  Under § 6-2-301(a)(vi), sexual contact means "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]"  Mr. Weston's argument is unavailing because the evidence was clearly sufficient to show he intended to inflict sexual intrusion upon the victim.

5

murder.'" *Id.,* ¶ 13, 231 P.3d at 1284 (quoting J. Ghent, *What Constitutes Attempted Murder,* 54 A.L.R.3d 612, § 9 (1973)).

[¶17]   Under the rationale of *Gentilini,* Mr. Weston took a substantial step to complete the crime of second-degree sexual abuse of the victim on June 24, 2015.  On that day, Mr. Weston and the victim made a plan for her to sneak out of the house and meet him at the Pines Apartments, which were across the street from her house.  Mr. Weston showered in anticipation of their meeting.  When the victim messaged him saying she was talking to the police, he stated he was already driving.  Mr. Weston said he would go home but told the victim to "let [him] know" if she could come out later.  When viewed in the context of their entire relationship and the strong evidence of Mr. Weston's intent, the jury could reasonably infer that Mr. Weston was driving to the Pines Apartments to pick the victim up and inflict sexual intrusion upon her.  Mr. Weston's conduct was strongly corroborative of the firmness of his intention to inflict sexual intrusion upon the victim.  Sections 6-1-301(a)(i) and 6-2-315(a)(i).

[¶18] Mr. Weston claims *Bueno-Hernandez v. State,* 724 P.2d 1132 (Wyo. 1986), demonstrates what must be shown to prove attempted second-degree sexual abuse of a minor and his actions did not meet those standards.  Mr. Bueno-Hernandez was convicted of attempted second-degree sexual assault under Wyo. Stat. Ann. § 6-2-303(a)(v) (1977) (repealed by 2007 Wyo. Sess. Laws ch. 159, § 3).  At the time of Mr. Bueno-Hernandez's offense, second-degree sexual assault prohibited the infliction of sexual intrusion on a child less than twelve years old by an actor at least four years older.  *Bueno-Hernandez,* 724 P.2d at 1139.  Mr. Bueno-Hernandez admitted to touching the child under her clothes, attempting to have sexual intercourse with her, and inserting his finger into her vagina.  *Id.* at 1135.

[¶19]   One of the issues in the case was whether the charge of attempted second-degree sexual assault under § 6-2-303(a)(v) was proper.  We held the general attempt statute applied to second-degree sexual assault, but there was no discussion in the opinion of what evidence was required to show the defendant had the specific intent to commit sexual intrusion or took a substantial step to complete the crime.  *Bueno-Hernandez,* 724 P.2d at 1140-41.  As relevant to Mr. Weston's point, our decision did not indicate that conduct similar to Mr. Bueno-Hernandez's was required to prove attempted second-degree sexual assault.  Moreover, the fact that Mr. Bueno-Hernandez inserted his finger into the child's vagina demonstrates he could have been charged and convicted of the completed crime because the definition of sexual intrusion included "any intrusion, however slight, by . . . any part of a person's body . . . into the genital . . . opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse."  *Id.* at 1140 (quoting § 6-2-301(a)(vii)).  Therefore, *Bueno-Hernandez* does not support Mr. Weston's position that his actions on June 24, 2015, did not meet the elements of attempted second-degree sexual abuse of a minor.

[¶20]   Mr. Weston also claims the evidence of attempt in this case was not as strong as the evidence in *Adams*.  Mr. Adams communicated in an online chatroom with a police officer who was posing as "Amber," a fifteen-year-old girl.  *Id.*, ¶ 3, 117 P.3d at 1213-14.  He asked about her anatomy and her sexual experience, offered to teach her about sex, and sent nude pictures of his genitals to her.  *Id.*  Mr. Adams invited "Amber" to his house to teach her about sex, but she stated she was worried about getting pregnant.  *Id.*  He said he would have condoms and arranged to pick her up at McDonalds.  *Id.*, ¶¶ 3-4, 117 P.3d at 1214.

[¶21]   Mr. Adams was arrested when he arrived at McDonalds and ultimately convicted of attempted sexual exploitation of a child and attempted solicitation to engage in illicit sexual relations.  *Id.*, ¶¶ 1, 5, 117 P.3d at 1213-14.  We concluded the evidence was sufficient to uphold his convictions because

> Mr. Adams clearly communicated his intent to entice a minor to engage in sexual acts and to encourage a minor to engage in sexual intrusion. He then took specific action to effectuate that intent, including driving to the proposed meeting place armed with wine coolers and condoms, thus meeting the requisite elements of the general attempt statute.

*Id.*, ¶ 13, 117 P.3d at 1215.

[¶22]   Mr. Weston asserts that under *Adams* the State was required to show he was in the victim's physical presence to prove the specific intent and substantial step elements of attempted second-degree sexual abuse of a minor.  He misreads *Adams*.  Mr. Adams' intent was found in his online communication.  Similarly, Mr. Weston's conversations with the victim demonstrated his specific intent to have sexual intercourse and oral sex with her.  Like Mr. Adams, Mr. Weston engaged in conduct beyond mere preparation by driving toward the meeting point.  Mr. Weston turned around before he got there because the victim told him she was talking to the police; however, that does not change the fact that he engaged in conduct which was strongly corroborative of the firmness of his intention to inflict sexual intrusion upon her.

[¶23]   The next case Mr. Weston claims supports his argument that the State did not prove he attempted to inflict sexual intrusion on the victim is *Rhodes v. State,* 2015 WY 60, 348 P.3d 404 (Wyo. 2015).  Mr. Rhodes was charged with attempted second-degree sexual abuse of a minor for pulling down a fourteen-year-old girl's shirt, grabbing her breasts, picking her up and pinning her on the floor.  *Id.*, ¶¶ 4-5, 348 P.3d at 406-07.  The jury acquitted Mr. Rhodes of the charge.  *Id.*, ¶ 8, 348 P.3d at 407.  Mr. Weston argues that the evidence of intent was stronger in *Rhodes* than in this case, so the evidence was clearly insufficient here.  Given we do not know why the jury acquitted Mr. Rhodes, it is impossible to draw any conclusions about the evidence from the fact that he was acquitted.

7

However, we note that, unlike in this case, there was no evidence Mr. Rhodes stated his specific intent to commit sexual intrusion. Thus, *Rhodes* does not support Mr. Weston's argument.

[¶24] Finally, Mr. Weston refers us to a Florida court of appeals decision reversing the appellant's conviction for attempted sexual battery – *Ellis v. State,* 754 So.2d 887 (Fla. Ct. App. 2000). Under Florida law, attempted sexual battery required proof of intent to penetrate the victim's vagina. *Id.* at 887. The court concluded the trial evidence showed only improper touching, so the conviction could not stand. *Id.* at 887-88. *Ellis* is nothing like this case where we have ample evidence from Mr. Weston's conversations with the victim that he intended to inflict sexual intrusion upon her.

[¶25] The trial evidence was sufficient for a jury to conclude that, on June 24, 2015, Mr. Weston had the specific intent to inflict sexual intrusion upon the victim and took a substantial step toward achieving that result. Therefore, it is unnecessary for us to determine whether his conduct at the park on July 26, 2015, also constituted attempted second-degree sexual abuse of a minor.

### Jury Instructions and Ineffective Assistance of Counsel

[¶26] Mr. Weston asserts the district court erred in instructing the jury on the elements of attempted second-degree sexual abuse of a minor. Defense counsel did not object to the instructions; therefore, Mr. Weston claims we should review for plain error. To establish the district court committed plain error, Mr. Weston must show: "1) the record is clear about the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) he was denied a substantial right resulting in material prejudice." *Sindelar v. State,* 2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018). *See also, Buszkiewic v. State,* 2018 WY 100, ¶ 10, 424 P.3d 1272, 1276 (Wyo. 2018). The State argues that Mr. Weston waived any instructional error by stipulating to the given instructions and declining a curative instruction when the jury asked a question. The waiver question is academic because Mr. Weston also argues his counsel provided ineffective assistance with regard to the instructions. We will, therefore, consider whether the instructions were clearly erroneous and how any errors relate to Mr. Weston's ineffective assistance of counsel claim. Finally, we will determine whether Mr. Weston was prejudiced by the errors.

### A. *Jury Instructions*

[¶27] "The purpose of jury instructions is to provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." *Blevins v. State,* 2017 WY 43, ¶ 26, 393 P.3d 1249, 1255 (Wyo. 2017) (citations and internal quotation marks omitted). To ensure the jury's verdict is reliable, the jury instructions must correctly state the law and adequately cover the relevant issues. *Id.* The ultimate test of whether

jury instructions are adequate is "whether they leave no doubt as to the circumstances under which the crime can be found to have been committed." *Id.*

[¶28]  The challenged jury instructions state:

INSTRUCTION NO. 17

The elements of the crime of Attempt to Commit Sexual Abuse of a Minor in the Second Degree are:

1.  Between the dates of June 4, 2015 and July 26, 2015;
2.  In Uinta County, Wyoming;
3.  The Defendant, Sean W. Weston;
4.  Intending to commit the crime of Sexual Abuse of a Minor in the Second Degree;
5.  Did an act which was a substantial step towards committing the crime of Sexual Abuse of a Minor in the Second Degree.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

INSTRUCTION NO. 20

The elements of the crime of Sexual Abuse of a Minor in the Second Degree are:

1.  Between the dates of June 4, 2015 and July 26, 2015;
2.  In Uinta County, Wyoming;
3.  The Defendant, Sean W. Weston;
4.  Attempted to inflict sexual intrusion upon [the victim];
5.  [The victim] was thirteen (13) through fifteen (15) years of age; . . .
6.  The Defendant was at least four (4) years older than [the victim]; and
7.  The Defendant was at least seventeen (17) years of age.

9

> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶29]  Mr. Weston asserts the district court committed two errors in the jury instructions. First, he claims the district court should have defined "substantial step" for the jury in Instruction No. 17.  This claim can be disposed of quickly.  Under *Compton,* 931 P.2d at 941, the trial court must provide the statutory definition of substantial step when instructing the jury on the elements of attempt under § 6-1-301(a)(i).  The State concedes *Compton* governs this case.  Therefore, the district court violated a clear and unequivocal rule of law by failing to instruct the jury on the statutory definition of substantial step.

[¶30]  Next, Mr. Weston asserts the district court erred in Instruction No. 20 by including "attempted" in the fourth element of second-degree sexual abuse of a minor when it had already instructed the jury about attempt in Instruction No. 17.  He claims, as a result, the jury was instructed it had to find he attempted to attempt sexual intrusion, which lowered the State's burden of proof.

[¶31]  There is nothing inherently wrong with combining the elements of attempt and the object crime into a single instruction.  *See, e.g.*, *Bloomfield v. State,* 2010 WY 97, ¶ 15, 234 P.3d 366, 373 (Wyo. 2010) (approving instruction incorporating the elements of attempt and second-degree murder); *Gentilini,* ¶¶ 19-20, 231 P.3d at 1286-87 (approving instruction combining the elements of attempt and first-degree murder).  We approved an instruction that did precisely that in the context of attempted sexual assault in the first degree in *Compton,* 931 P.2d at 939-40.  The instruction correctly informed the jury it had to find that "[w]ith the intent to commit sexual intrusion on [the victim], Raymond Compton[] did an act which was a substantial step towards the infliction of sexual intrusion on her." *Id.* at 939.  We explained that "[c]ombining the elements of [attempt and first-degree sexual assault] was not error . . . because the instruction left no doubt as to under what circumstances the crime could be found to have been committed in this case." *Id.* at 940.

[¶32]  As we have already discussed, one of the elements the State was required to prove was that Mr. Weston had the specific intent to complete the crime of second-degree sexual abuse of a minor, i.e., the specific intent to inflict sexual intrusion upon the victim. Although Instruction No. 17 should have defined substantial step, the instruction correctly stated the State had to show Mr. Weston had the specific intent to commit second-degree sexual abuse of a minor and took a substantial step to complete the crime.  Since the district

10

court did not combine the elements of attempted second-degree sexual abuse of a minor into one instruction, Instruction No. 20 should have simply included the elements of the underlying crime. Under these circumstances, the district court incorrectly incorporated the concept of attempt into Instruction No. 20. Reading the two instructions together, the district court improperly directed the jury to determine whether Mr. Weston had the specific intent to attempt to inflict sexual intrusion. Thus, the district court did not adequately explain to the jury how the concepts of specific intent and attempt worked together.[3]

[¶33] The jury expressed its bewilderment when it asked the following question during deliberations:

> Question:
>
> Instruction # 17 # 4
>
> We would like to know the difference between # 4 <u>Intending</u> and Instruction # 20 # 4 <u>Attempted</u>?

The district court discussed the question with counsel. The State proposed modifying Instruction No. 20 by removing the reference to attempt. Defense counsel argued the district court should not change Instruction No. 20 but advocated for giving additional instructions telling the jury to apply the ordinary meanings of the words used in the instructions and to consider Instruction No. 17 before Instruction No. 20. The district court took the matter under advisement, but the jury returned a verdict before the court responded to the question. Under these circumstances, the district court's instructions on the elements of attempted second-degree sexual abuse of a minor were clearly incorrect. Having decided the district court erred by failing to define substantial step for the jury and including the concept of attempt in the elements of second-degree sexual abuse of a minor, we turn to Mr. Weston's claim that his counsel provided ineffective assistance regarding the instructions. We will address later whether Mr. Weston was prejudiced by the incorrect instructions.

### B. *Ineffective Assistance of Counsel*

[¶34] The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution guarantee a criminal defendant the right to effective assistance of counsel. "Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*." *Hibsman v. State*, 2015 WY 122, ¶ 14, 355 P.3d 1240,

---

[3] The elements instructions were also confusing because they were separated by Instruction No. 18, which explained the concept of renunciation, and Instruction No. 19, which defined "sexual intrusion" prior to that term being introduced to the jury in Instruction No. 20.

1244 (Wyo. 2015). *See also*, *Webb v. State,* 2017 WY 108, ¶ 33, 401 P.3d 914, 926 (Wyo. 2017). To demonstrate he did not receive effective assistance from defense counsel, the appellant must show his counsel's performance was deficient and the deficient performance prejudiced his defense. *Griggs v. State,* 2016 WY 16, ¶ 36, 367 P.3d 1108, 1124 (Wyo. 2016) (citing *Cooper v. State,* 2014 WY 36, ¶¶ 19-20, 319 P.3d 914, 920 (Wyo. 2014), and *Strickland v. Washington,* 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

[¶35] Both parts of the test must be satisfied to establish ineffective assistance of counsel. "The failure to make the required showing of either deficient performance or prejudice will result in a finding that counsel was not ineffective." *Osborne v. State*, 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012). Therefore,

> [a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. … If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*McNaughton v. State,* 2016 WY 112, ¶ 12, 384 P.3d 276, 278 (Wyo. 2016) (quoting *Sen v. State*, 2013 WY 47, ¶ 39, 301 P.3d 106, 121 (Wyo. 2013), which quoted *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069)) (quotation marks omitted).

[¶36] To prove deficient performance, the appellant must show "counsel failed to render such assistance as would have been offered by a reasonably competent attorney." *Cooper,* ¶ 19, 319 P.3d at 920. Although defense counsel obviously made mistakes regarding the jury instructions in this case, it is unnecessary to discuss in detail whether defense counsel's performance was deficient. Instead, we will move directly to the analysis of whether Mr. Weston suffered any prejudice as a result of the incorrect jury instructions.

## C. *Prejudice*

[¶37] The measure of prejudice is the same regardless of whether we review for plain error in the jury instructions or ineffective assistance of counsel. Under either standard, the appellant must establish he suffered material prejudice from the error by demonstrating it is reasonably probable he would have received a more favorable verdict if the error had not been made. *See, e.g., Sindelar,* ¶ 20, 416 P.3d at 770 (plain error); *Farrow v. State,* 2019 WY 30, ¶ 72, 437 P.3d 809, 827 (Wyo. 2019) (ineffective assistance of counsel). We will not find prejudice when the jury is incorrectly instructed on an element of the crime if "the element [was] not contested at trial or [the] evidence of the defendant's guilt is overwhelming." *Compton,* 931 P.2d at 941. *See also*, *Jones v. State,* 2011 WY 114, ¶¶

16-18, 256 P.3d 527, 533-34 (Wyo. 2011); *Granzer v. State,* 2008 WY 118, ¶ 21, 193 P.3d 266, 272 (Wyo. 2008).

[¶38]   Mr. Weston contested the specific intent and substantial step elements of the charge; consequently, we must consider the strength of the evidence against him.  In determining whether an appellant was prejudiced by the trial errors, we consider the entire record. *See, e.g.*, *Law v. State,* 2004 WY 111, ¶¶ 25-29, 98 P.3d 181, 190-91 (Wyo. 2004) (reviewing the entire record to determine if appellant was prejudiced by erroneous admission of evidence); *Wilks v. State,* 2002 WY 100, ¶ 21, 49 P.3d 975, 984-85 (Wyo. 2002) (reviewing the entire record to determine if appellant was prejudiced by improper testimony).  We reviewed the State's evidence in our discussion of the sufficiency of the evidence and will not repeat that in detail here.  In brief, the evidence showed Mr. Weston exchanged messages with the victim over a period of several weeks and those messages contained detailed descriptions of the sexual acts (including sexual intercourse and oral sex) he wanted to perform on her.  Mr. Weston also encouraged the victim to sneak away from her parents so he could pick her up and take her to his house to have sex.

[¶39]   Mr. Weston's defense was that he was not going to do "anything physical" with the victim until she was eighteen years old and their sexual discussions were "just a game."  Mr. Weston made a few statements in his Facebook conversations with the victim to the effect that he would wait until she was eighteen to have sex with her or marry her.  However, his statements about waiting until she was eighteen to have sex were belied by his repeated insistence that she sneak away from her parents so he could pick her up and take her to his house to have sex.  His statements were also unbelievable because some of his stated sexual desires involved attributes related to the victim's youthful age, including her "young" genitalia and her braces.

[¶40]   On the night of June 24, 2015, Mr. Weston made a specific plan with the victim to pick her up from the Pines Apartments across the street from her house.  In anticipation of their meeting, he showered and began driving.  Mr. Weston claims the evidence did not show he was driving to meet her.  He testified he was "probably [driving] to the store."  That story is completely inconsistent with the Facebook messages indicating he was driving to the rendezvous point when the victim called off their meeting by lying about the police being at her house.  At that point, Mr. Weston said he was going home but indicated he would come back to get her after the police left.

[¶41]   Mr. Weston's statements over several weeks confirmed he had the specific intent to inflict sexual intrusion upon the victim and his actions on June 24, 2015, were strongly corroborative of the firmness of his intention to complete the crime of second-degree sexual abuse of a minor.  The evidence against Mr. Weston was overwhelming and there was no reasonable probability he would have received a more favorable verdict if the jury had been instructed correctly.

13

[¶42]   Affirmed.