# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 97

### APRIL TERM, A.D. 2024

### September 9, 2024

ANTONIO KAYE LEE,

Appellant
(Defendant),

v.                                                          S-24-0056

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Ryan Roden, Interim Wyoming State Public Defender*; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

*An Order Substituting Ryan Roden for Diane Lozano was entered on August 9, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Antonio Kaye Lee was convicted of two counts of attempting to disarm a peace officer. On appeal, he claims the district court erred in failing to instruct the jury on all elements of those charges. We reverse.

## *ISSUE*

[¶2]    The sole issue in this appeal is whether the district court committed reversible error in failing to instruct the jury on all elements of attempting to disarm a peace officer.

## *FACTS*

[¶3]    On the evening of March 4, 2023, Officer Brandon LaPointe of the Rock Springs Police Department stopped Mr. Lee's vehicle on suspicion of illegally tinted windows. After approaching the vehicle, Officer LaPointe explained the reason for the stop and measured the tint on the windows, which confirmed the tint was too dark. He asked for Mr. Lee's driver's license and insurance, and while Mr. Lee searched for his current insurance information, Officer LaPointe returned to his vehicle and called for a canine unit to perform a free-air sniff of the vehicle.

[¶4]    Officer Ruslan Kolb responded with his canine. Officer Kolb was the fourth officer at the scene; one officer left shortly thereafter, leaving Officer LaPointe, Officer Kolb, and Officer Kimberly Brown. Officer Brown removed Mr. Lee from his vehicle, and when Officer Kolb ran his canine around the vehicle, it alerted to the presence of narcotics.

[¶5]    After the positive alert, Officer Kolb joined Officer Brown, who was standing with Mr. Lee, and Officer LaPointe searched the vehicle. Officer LaPointe found a scale in the glove box that had a crystal-like substance on it, consistent with methamphetamine, and a pipe in the center console containing what appeared to be methamphetamine residue. He field-tested the substance, which came back presumptively positive for methamphetamine.

[¶6]    Officer LaPointe told Mr. Lee he had found methamphetamine in his vehicle and that he was under arrest. Mr. Lee pleaded with Officer LaPointe not to arrest him, swung an arm out toward him, and tried to run. At that point a struggle ensued, and within five seconds Officer LaPointe yelled, "Let go of my gun." About ten seconds later, while officers were struggling with Mr. Lee against his truck, Officer Brown tased Mr. Lee, and then Officer Kolb yelled, "get off the gun." The officers were able to get Mr. Lee to the ground after Officer Brown tased him again and Officer LaPointe pulled his feet out from under him.

1

[¶7]   The officers obtained control of Mr. Lee about three and a half minutes into the arrest. They then searched his person and found a vial containing oxycodone pills, and another container that held marijuana and methamphetamine.

[¶8]   The State charged Mr. Lee with seven crimes: attempting to disarm Officer LaPointe; attempting to disarm Officer Kolb; misdemeanor interference with a peace officer; misdemeanor possession of methamphetamine; misdemeanor possession of oxycodone; misdemeanor possession of marijuana; and use of methamphetamine. The State dismissed the use charge before trial.

[¶9]   At trial, Mr. Lee conceded he was guilty of misdemeanor interference and the possession charges but denied that he attempted to disarm either Officer LaPointe or Officer Kolb. He testified that when he wrestled the officers, he was trying to get away and had no intent to disarm them. He further testified that he did not grab the firearm of either Officer LaPointe or Officer Kolb.

[¶10]  In contrast, Officer LaPointe testified that he felt Mr. Lee grab and tug on his firearm, and he removed Mr. Lee's hand from the firearm. Similarly, Officer Kolb testified that Mr. Lee grabbed his firearm and pulled up on it in their initial struggle and he pried Mr. Lee's fingers off the firearm. He further testified that when they ended up against Mr. Lee's vehicle, Mr. Lee grabbed the firearm again. At that point, Officer Kolb moved his hips and slammed the gun against the truck to prevent its removal.

[¶11]  The jury returned a guilty verdict on all six counts against Mr. Lee. For each misdemeanor conviction, the district court sentenced him to 365 days in jail with credit for 223 days served, with the sentences to run concurrently. For each count of attempting to disarm an officer, the court sentenced him to a prison term of fifty-four to sixty months, with the sentences to run concurrent with each other and consecutive to the misdemeanor sentences.

## *STANDARD OF REVIEW*

[¶12]  Mr. Lee contends the district court erred in instructing the jury on the elements of attempting to disarm a peace officer. Because he did not object to the court's instructions, we review for plain error. *Kobielusz v. State*, 2024 WY 10, ¶ 24, 541 P.3d 1101, 1108 (Wyo. 2024); *see also* W.R.Cr.P. 30(a) (2023) ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection."); *Mendoza v. State*, 2013 WY 55, ¶¶ 9-10, 300 P.3d 487, 490 (Wyo. 2013) (reviewing challenged instruction for plain error where defendant requested and was granted revision of instruction but did not object when court failed to give revised instruction). To establish plain error, an appellant must show: "(1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear

2

and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice." *Id*. (citing *Walker v. State*, 2022 WY 158, ¶ 17, 521 P.3d 967, 976 (Wyo. 2022)). "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error." *Soares v. State*, 2024 WY 39, ¶ 37, 545 P.3d 871, 880 (Wyo. 2024) (quoting *Gutierrez v. State*, 2020 WY 150, ¶ 5, 477 P.3d 528, 531 (Wyo. 2020)).

## *DISCUSSION*

[¶13]   The crime of attempt is statutorily defined in relevant part as follows:

> (a) A person is guilty of an attempt to commit a crime if:
>
>> (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime.

Wyo. Stat. Ann. § 6-1-301 (2023). To prove an attempted crime, the State must therefore prove two elements: 1) "the defendant had the specific intent to complete the crime;" and 2) the defendant "took a substantial step to achieve that result." *Weston v. State*, 2019 WY 113, ¶ 14, 451 P.3d 758, 763 (Wyo. 2019) (citing *Pearson v. State*, 2017 WY 19, ¶¶ 19-20, 389 P.3d 794, 798-99 (Wyo. 2017)).

[¶14]   Before trial, the State submitted a pattern jury instruction defining an attempted crime. The pattern instruction read:

> A person attempts to commit a crime when, intending that the crime be committed, he does any act which is a substantial step toward commission of that crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime.

[¶15]   The State also proposed elements instructions for each count of attempted disarming of a peace officer that incorporated both the element of intent to commit the crime and the requirement that Mr. Lee "[d]id an act which was a substantial step towards the commission of the crime." Mr. Lee submitted the same pattern jury instruction defining the elements of an attempted crime along with an elements instruction for the crime of disarming an officer.

3

[¶16] The district court held an informal instructions conference that was not recorded and a formal one that was. During the formal conference the court stated:

> There was quite a bit of discussion at the informal conference yesterday. Both of the parties had requested the pattern instructions, which broke out attempt into two instructions, one for the crime itself, if completed, and another for attempt. The Court had suggested that they be combined and reorganized with the staff attorney, a few times, to give different suggestions for combining them.
>
> Before I left yesterday, the parties were still wanting the patterns, but I'm understanding that – at this point, that there's either no dispute or that there's no objection to it this way.

[¶17] Neither party objected to a combined instruction; nor did either object when the district court withdrew the instruction separately defining the elements of an attempted crime. This resulted in two elements instructions on the charge of attempted disarming of a peace officer, one for each officer. Each instruction read:

> The elements of the crime of Attempt to Disarm a Peace Officer . . . are:
>
> 1. On or about March 4, 2023
> 2. In Sweetwater County, Wyoming
> 3. The Defendant, Antonio Kaye Lee
> 4. Intending to commit the crime of disarming a peace officer
> 5. Intentionally and knowingly
> 6. Attempted to
> 7. Disarm a peace officer ([Officer's Name]) of his firearm
> 8. While that peace officer was engaged in the lawful performance of his official duties.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved

4

beyond a reasonable doubt, then you should find the defendant not guilty.

[¶18] Mr. Lee contends the district court committed plain error in so instructing the jury because the instructions failed to inform the jury that it must find that Mr. Lee took a substantial step toward commission of the crime, and they failed to define what constitutes a substantial step. Because the record contains the allegedly erroneous instructions, the first prong of the plain error test is satisfied. As to the second prong, the State concedes, and we agree, that the district court violated a clear and unequivocal rule of law when it failed to instruct the jury on the substantial step element of attempt. *See Person v. State*, 2023 WY 26, ¶ 71, 526 P.3d 61, 78 (Wyo. 2023) (failure to properly instruct jury on elements of crime is error); *Weston*, 2019 WY 113, ¶ 29, 451 P.3d at 767 ("[T]he district court violated a clear and unequivocal rule of law by failing to instruct the jury on the statutory definition of substantial step."); *Compton v. State*, 931 P.2d 936, 941 (Wyo. 1997) (finding error in failure to provide statutory definition of substantial step).

[¶19] The disputed question is whether the erroneous instruction materially prejudiced Mr. Lee. We recognize that "under the plain error standard, failure to instruct on an essential element is not reversible if the element was not contested or where evidence of the defendant's guilt is overwhelming because, under those circumstances, the defendant suffers no prejudice from the violation." *Andersen v. State*, 2014 WY 88, ¶ 20, 330 P.3d 256, 262 (Wyo. 2014) (quoting *Jones v. State*, 2011 WY 114, ¶ 14, 256 P.3d 527, 533 (Wyo. 2011)); *see also Person*, 2023 WY 26, ¶ 94, 526 P.3d at 82. However, we have also observed that "there will be few instances in which these criteria are met, and it will be the rare case in which the omission of an element of a crime from the jury instructions does not cause prejudice to the defendant." *Andersen*, 2014 WY 88, ¶ 20, 330 P.3d at 262.

[¶20] The State contends this is one of those cases. It argues overwhelming evidence established that Mr. Lee grabbed the officers' firearms, which was a substantial step toward disarming the officers, and there is therefore not a reasonable probability that the verdict would have been more favorable had the jury been properly instructed. In so arguing, it likens this case to our decision in *Weston* where we found no reversible error in the district court's failure to define substantial step for the jury because the evidence of that element was overwhelming. 2019 WY 113, ¶¶ 29, 41, 451 P.3d at 767, 769. The State's reliance on *Weston* is misplaced.

[¶21] In *Weston*, the defendant was convicted of attempted second-degree sexual abuse of a minor after he arranged to meet a 15-year-old girl for a sexual encounter. 2019 WY 113, ¶¶ 3-10, 451 P.3d at 761-62. In holding that the district court's failure to instruct the jury on the statutory definition of substantial step did not materially prejudice the defendant, we considered weeks of sexually explicit messages the defendant exchanged with the victim, including his stated desires involving attributes of the victim's youth,

including "her 'young' genitalia and her braces." *Id.*, 2019 WY 113, ¶ 39, 451 P.3d at 769. We also considered evidence that the defendant had made specific plans to meet the victim and had showered and begun driving to the agreed-upon rendezvous point. *Id.*, 2019 WY 113, ¶ 40, 451 P.3d at 769. Despite the defendant's testimony that he did not intend to have physical contact with the victim until she was eighteen, we concluded:

> Mr. Weston's statements over several weeks confirmed he had the specific intent to inflict sexual intrusion upon the victim and his actions on June 24, 2015, were strongly corroborative of the firmness of his intention to complete the crime of second-degree sexual abuse of a minor. The evidence against Mr. Weston was overwhelming and there was no reasonable probability he would have received a more favorable verdict if the jury had been instructed correctly.

*Id.*, 2019 WY 113, ¶ 41, 451 P.3d at 769.

[¶22]  Mr. Lee's case is different. In *Weston*, although the defendant denied any intent to have physical contact with the victim, the evidence this Court found to be a substantial step toward commission of the crime, that being his sexually explicit messages and his actions, was undisputed. Here, the conduct that the State asserts was a substantial step toward commission of the crime was Mr. Lee's alleged grabbing of the officers' firearms, and the evidence of that grabbing was disputed.

[¶23]  Officers LaPointe and Kolb testified that they felt Mr. Lee's hand on their firearm and removed his hand from the firearm; Mr. Lee testified to the contrary that he never grabbed either officer's firearm. Additionally, these events occurred over seconds during a physical altercation with many moving parts, and defense counsel elicited testimony from Officer LaPointe of an alternate explanation of what the officers may have perceived during that altercation:

> Q.    (By [Defense Counsel]):   You – you used a demonstrative exhibit yesterday of how your SIG Sauer service pistol locks into your holster?
>
> A.    Yes.
>
> Q.    Correct?
>
> And when it's – and I kind of monkeyed around with it a little bit during one of the breaks. I mean, when that pistol is locked in, it – I mean, it's locked in, is it not?

A.	Yep.

Q.	And kind of sort of, to an extent, the pistol and the holster kind of become one thing when they're locked together, isn't it?

A.	A little bit, yeah.

Q.	Okay. And what you testified to is that you felt a tugging on – on your pistol area, correct?

A.	Yes.

Q.	Okay. I mean, isn't it possible that the tugging came from the holster instead of the pistol itself?

A.	I don't believe so. I believe he had it on the gun.

Q.	Okay. But you didn't – but you didn't see it, correct?

A.	Correct.

[¶24] "The purpose of jury instructions is to provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." *Weston*, 2019 WY 113, ¶ 27, 451 P.3d at 766 (quoting *Blevins v. State*, 2017 WY 43, ¶ 26, 393 P.3d 1249, 1255 (Wyo. 2017)). We have also said:

> Two major principles of our system of justice are unwavering adherence to the rule of law, and trust in juries to resolve factual disputes. Correct instructions on the law are the thread that binds those two principles together. They make it possible for the jury to apply general rules of law enacted by the legislature or adopted by the courts to the particular case before it.

*Andersen*, 2014 WY 88, ¶ 14, 330 P.3d at 260.

[¶25] It was the jury's responsibility in this case to weigh the conflicting testimony of the officers and Mr. Lee and to decide whose account of Mr. Lee's actions was more credible, or whose perception of Mr. Lee's actions was more accurate. In the absence of an instruction requiring the jury to determine whether Mr. Lee took a substantial step

7

toward commission of the crime, we cannot know if the jury made that decision. We only know that the jury found Mr. Lee had the intent to disarm the officers; we cannot know whether it also found he grabbed the officers' firearms, which is the substantial step the State asserts completed the crime.

[¶26] We disagree with the State that the jury's verdict necessarily shows it found the officers' testimony more credible or accurate and it must therefore have found that Mr. Lee grabbed the officers' firearms. Again, we only know from the verdict that the jury found Mr. Lee intended to disarm the officers. It could have inferred that intent from evidence other than the alleged grabbing of the firearms, such as Mr. Lee's testimony that he was trying to get away.

[¶27] "It is . . . crucial that the district court provide a correct précis of the law and adequately cover all relevant issues in order to assure that the jury is not left to decide the case on some other and perhaps improper basis." *Andersen*, 2014 WY 88, ¶ 14, 330 P.3d at 260 (citing *Walker v. State*, 2013 WY 58, ¶ 31, 302 P.3d 182, 191 (Wyo. 2013)). Because there was evidence from which the jury could have found an intent to disarm without also finding that Mr. Lee took a substantial step toward commission of that crime, we must conclude there is a reasonable probability the jury verdict would have been more favorable in the absence of the erroneous jury instructions.

[¶28] Reversed.