# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 19

**OCTOBER TERM, A.D. 2024**

**February 13, 2025**

MATTHEW SCOTT IVERSON,

Appellant
(Defendant),

v.                                                            S-24-0178

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Robin S. Cooley, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon Booth*, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

* An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   A jury found Matthew Scott Iverson guilty of possessing and reproducing child pornography.  On appeal, he claims the district court erred in failing to instruct the jury on the mens rea element of reproducing child pornography.  The jury instructions were incorrect, but the error was not prejudicial because the State presented overwhelming evidence that Mr. Iverson "knowingly" reproduced child pornography.  We affirm.

*ISSUE*

[¶2]   The single issue in this appeal is whether the district court committed plain error when it failed to instruct the jury on all elements of reproducing child pornography.

*FACTS*

[¶3]   While a housecleaner was preparing a rental property for a new tenant in March 2023, she uncovered a USB drive that had been left behind.  In order to find the thumb drive's owner, she took it home and plugged it into her computer.  She opened a file, and a disturbing image arose.  She "ripped" the USB from her computer and drove it to the police station.  The Cheyenne Police Department examined the USB drive and found hundreds of images of child pornography.

[¶4]   The police identified the previous tenants as Matthew Iverson, his mother Danette Iverson, and his teenage son.  Dale Iverson, Matthew Iverson's stepfather, had lived at the property before his death in November 2022.  The police served a search warrant on the Iversons' new residence and seized all electronic storage devices that could contain illegal images.  Detectives seized a HP Mini 110 from inside Mathew Iverson's bedroom closet and a HP laptop computer from his desk.  Detectives also took an Onn tablet from the drawer next to Mr. Iverson's bed.  All three devices contained child pornography.

[¶5]   The State charged Mr. Iverson with five counts of sexual exploitation of children.  Count I alleged that Iverson "knowingly reproduce[d] child pornography" in violation of Wyo. Stat. Ann. § 6-4-303(b)(iii).  The remaining possession charges corresponded to the four electronic devices: the USB drive, the Onn tablet, the HP laptop, and the HP Mini 110.

[¶6]   At trial, the State presented testimony from Detective Willmarth, a digital forensic examiner with the Cheyenne Police Department, who examined the electronic devices and prepared investigative reports.  The Detective's examination of the USB drive revealed that it had been plugged into the HP laptop computer multiple times over the years, but most recently in December 2022.  This explained why Detective Willmarth found nearly identical images on the USB drive and the HP laptop computer.

1

[¶7]　When Detective Willmarth examined the Onn tablet, he discovered the tablet was unlocked and accessed with the same passcode as Mr. Iverson's cellphone. He then used forensic software to obtain a digital copy of the Onn tablet's operating system, application files, and data bases. The digital report detailed how the Onn tablet's user typed various search terms—associated with child pornography—into the web browser throughout February 2023. The tablet's internet history showed several websites that directly related to the search terms, and the tablet's user manually created 16 screenshots from the websites. The screenshots were timestamped and stored in the gallery section of the device. Detective Willmarth testified that the screenshots had created new images of child pornography.

[¶8]　A forensic examination of the HP Mini 110 revealed child pornography in the internet temporary files, the device's page files, and the unallocated locations on the hard drive, which indicated that the files had been changed or deleted. The device also contained search terms and internet history associated with child pornography.

[¶9]　The State also presented Detective Willmarth's report that identified seven "binarily identical" files across three devices: the USB drive, the HP Mini 110, and the Onn tablet. The Detective testified the images shared digital fingerprints, or hash values, and were most likely duplicated from one device to another.

[¶10]　The State played a video recording of Detective Willmarth's interview with Mr. Iverson for the jury. During their conversation, Detective Willmarth mentioned the images that were screenshotted and saved onto the Onn table. He asked, "[y]ou started looking at new images, right, and then you screenshotted some, you downloaded some, right?" Mr. Iverson nodded in apparent agreement. Detective Willmarth followed-up: "How many images do you think that you downloaded, total?" Mr. Iverson answered, "I would guess maybe twenty." Detective Willmarth asked why Mr. Iverson had saved images onto the Onn tablet, and Mr. Iverson explained that he was trying to determine the "background behind it" and "what parts of the world allow this."

[¶11] Mr. Iverson testified at trial. He claimed he found the Onn tablet among his deceased stepfather's belongings. When he discovered "naked children" on the tablet, he locked it using the same passcode as his cellphone to prevent others from seeing the content. He returned to the tablet sometime later to ensure his son and his niece were not in the pictures. Mr. Iverson testified that he generally misunderstood Detective Willmarth's line of questioning during the interview, claiming that he believed the two were discussing adult pornography. He categorically denied downloading, screenshotting, inserting the USB drive into computers, sharing, or reproducing child pornography. When asked why he had admitted to downloading twenty images during the interview, Mr. Iverson said he has a fascination with number patterns.

[¶12]   A jury found Mr. Iverson guilty on all five charges, and the district court sentenced him to eight to ten years in prison for reproducing child pornography and five to ten years for each of the four possession charges, with all five sentences running concurrently.  This appeal followed.

*STANDARD OF REVIEW*

[¶13]   Mr. Iverson argues the district court erred in instructing the jury on the mens rea element of reproducing child pornography.  Because he did not object to the court's instructions, we review for plain error.  *Lee v. State*, 2024 WY 97, ¶ 12, 555 P.3d 496, 499 (Wyo. 2024); *see also* W.R.Cr.P. 30(a) (2023) ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.").  To establish plain error, an appellant must show: "(1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice." *Kobielusz v. State*, 2024 WY 10, ¶ 24, 541 P.3d 1101, 1108 (Wyo. 2024) (citing *Walker v. State*, 2022 WY 158, ¶ 17, 521 P.3d 967, 976 (Wyo. 2022)). "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error."  *Lee*, 2024 WY 97, ¶ 12, 555 P.3d at 499.

*DISCUSSION*

[¶14]   Under Wyoming law, it is a felony to sexually exploit children.  Wyo. Stat. Ann. § 6-4-303(c).  A person is guilty if he "knowingly: [m]anufacturers, generates, creates, receives, distributes, reproduces, delivers or possesses with the intent to deliver, including through digital or electronic means, whether or not by computer, any child pornography." Wyo. Stat. Ann. § 6-4-303(b)(iii).  Under the statute, "knowingly" means "with awareness, deliberateness, or intention as distinguished from inadvertently or involuntarily." *Barrett v. State*, 2022 WY 64, ¶ 36, 509 P.3d 940, 948 (Wyo. 2022) (internal quotation marks and citation omitted).

[¶15]   Before trial, Mr. Iverson and the State requested the district court give the pattern jury instruction on the elements of reproducing child pornography as charged in Count I. Following the proposed pattern instruction, the district court told the jury:

> The elements of the crimes of Sexual Exploitation of a Child — Reproducing Child Pornography, as charged in Count I of this case, are:
>
> 1.  On or between April 01, 2020 through April 4, 2023
> 2.  In Laramie County, Wyoming
> 3.  The Defendant, Matthew Scott Iverson,

4. Reproduced, including through digital or electronic means,

5. Any child pornography.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

W.Cr.P.J.I 43.03B2 specified the timing and means of reproduction, but omitted the "knowingly" element of the crime.

[¶16] The first prong of the plain error test is satisfied because the record contains the erroneous instruction. As to the second prong, the State concedes that the district court violated a clear and unequivocal rule of law when it failed to instruct the jury on the mens rea element of the crime. *Blevins v. State*, 2017 WY 43, ¶ 26, 393 P.3d 1249, 1255 (Wyo. 2017) (instructions must "provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law.") (internal quotation marks and citation omitted); *See Person v. State*, 2023 WY 26, ¶ 71, 526 P.3d 61, 78 (Wyo. 2023) (failure to properly instruct jury on elements of crime is error); *Weston v. State*, 2019 WY 113, ¶ 29, 451 P.3d 758, 767 (Wyo. 2019) ("[T]he district court violated a clear and unequivocal rule of law by failing to instruct the jury on the statutory definition of substantial step.").

[¶17] We thus must determine whether the erroneous instruction materially prejudiced Mr. Iverson. We recognize "under the plain error standard, failure to instruct on an essential element is not reversible if the element was not contested or where evidence of the defendant's guilt is overwhelming because, under those circumstances, the defendant suffers no prejudice from the violation." *Lee*, 2024 WY 97, ¶ 19, 555 P.3d at 500 (citing *Andersen v. State*, 2014 WY 88, ¶ 20, 330 P.3d 256, 262 (Wyo. 2014)) (citation omitted).

[¶18] The State suggests Mr. Iverson cannot show error because he did not contest the "knowingly" element at trial. We disagree. Mr. Iverson unequivocally testified he did not screenshot images, reproduce, share, or download illegal material. By denying he committed the alleged crimes, Mr. Iverson necessarily denied he had the intent to do so.

[¶19] We next must consider whether this is one of the rare cases where the evidence of Mr. Iverson's guilt is so overwhelming that he can suffer no prejudice from the failure to instruct the jury on the "knowingly" element. *Lee*, 2024 WY 97, ¶ 19, 555 P.3d at 500 (quoting *Andersen*, 2014 WY 88, ¶ 20, 330 P.3d at 262) ("[I]t will be the rare case in which the omission of an element of a crime from the jury instructions does not cause prejudice

to the defendant."). In determining whether Mr. Iverson was prejudiced by the erroneous instruction, we consider the entire record. *Weston*, 2019 WY 113, ¶ 38, 451 P.3d at 768 (citing *Law v. State,* 2004 WY 111, ¶¶ 25-29, 98 P.3d 181, 190-91 (Wyo. 2004)).

[¶20] Mr. Iverson's defense drew attention to Dale Iverson. Mr. Iverson testified that his stepfather previously owned the devices, was abusive, acted strangely with children, and may have put the child pornography on the devices. Mr. Iverson failed, however, to explain how Dale Iverson could have accessed or reproduced child pornography on the USB drive and three other devices between December 2022 and February 2023, following his death in November 2022.

[¶21] In reaching its verdict, the jury clearly found Mr. Iverson reproduced child pornography. Evidence to support this finding included digital forensics that cataloged each act of reproduction on the Onn tablet in early 2023. Mr. Iverson kept the Onn tablet in his bedside drawer. He knew the tablet contained child pornography, and he unlocked it with the same passcode as his cellphone. In January 2023, someone searched for child pornography on the tablet (24 search terms), then viewed child pornography websites (189 webpages), then manually downloaded child pornography (16 screenshots). In his interview with Detective Willmarth, Mr. Iverson made a near approximation and admitted to downloading "maybe" 20 images. He said he downloaded some images to figure out the "background behind it."

[¶22] By placing the Onn tablet's screenshots into a chronological account, the forensics related the illegal downloads back to a series of intentional acts on the internet. Even though they were not instructed that Mr. Iverson had to have knowingly reproduced the images, the jury would reasonably have inferred from the forensic evidence that Mr. Iverson purposely searched for child pornography, viewed it on websites, and then saved 16 images on that device. In other words, the evidence did not support a conclusion that the screenshots were made by accident.[1]

[¶23] The evidence further established that the USB transferred illegal images to the HP laptop computer. Mr. Iverson kept the HP laptop on his desk, and frequently accessed it to check email and pay bills. The USB connected to the computer several times over the years, but most recently, it was inserted twice on December 17, 2022. Visually similar images of child pornography existed between the two devices. The images were not perfectly identical only because they changed size during the download.

[¶24] Mr. Iverson testified that he had never seen the USB drive before. His recorded interview statements, played to the jury, indicated to the contrary. During that exchange, Mr. Iverson nodded and said "mmhmm" when Detective Willmarth asked him if he used

---

[1] The HP Mini 110, that was found in Mr. Iverson's bedroom closet, contained similar search terms and internet history.

5

the tablet and the USB drive to view child pornography, rather than his cellphone. Detective Willmarth then asked if he used the USB drive on the computer. Mr. Iverson responded: "I had to have found it at some point."

[¶25] These statements, evidence of Mr. Iverson's access to the HP laptop, the timing of when the USB connected to the HP laptop, and the presence of hundreds of pornographic images on the USB drive support only one conclusion—Mr. Iverson deliberately used the USB as it was designed: to transfer stored data onto a separate device.

[¶26] The State also introduced Detective Willmarth's report about image reproduction between the USB drive, the Onn tablet, and the HP Mini 110. The report showed that binarily identical images, stored in identically named folders, lived in all devices. Detective Willmarth explained that the files were likely duplicated from one device to another, meaning at least two connections happened to result in identical files on all three devices. Having shown the devices were under Mr. Iverson's control when connections and data were shared between them, the jury could easily have rejected any possibility Mr. Iverson was unaware of the illegal material or reproduced it by accident. Accordingly, this case aligns with others where the omission of an element from the jury instruction does not warrant reversal.

[¶27] In *Weston*, we upheld the defendant's conviction of attempted sexual abuse of a minor, despite the district court's failure to correctly instruct on the intent element. 2019 WY 113, ¶ 1, 451 P.3d at 761. Against the defendant's explanations—that he did not intend to have physical contact with the victim until she was eighteen—the record included weeks of sexually explicit Facebook messages he exchanged with the victim. *Id.*, 2019 WY 113, ¶ 39, 451 P. 3d at 769. The defendant's statements, recorded by Facebook messenger and presented to the jury, strongly corroborated his intent. *Id.*, 2019 WY 113, ¶ 41, 451 P.3d at 769. We concluded there was no reasonable probability he would have received a more favorable verdict if the jury had been instructed correctly. *Id.*

[¶28] In *Sindelar v. State*, we determined that the district court violated a clear and unequivocal rule of law when it incorrectly instructed that the defendant had an absolute duty to retreat if he was not the aggressor. 2018 WY 29, ¶¶ 18-22, 416 P.3d 764, 770 (Wyo. 2018). Regardless, overwhelming evidence established that the defendant was the aggressor. *Id.*, 2018 WY 29, ¶ 25, 416 P.3d at 771. While he posed a theory that the victim entered the conflict with a knife, no physical evidence or witness testimony corroborated this version of events. *Id.*, 2018 WY 29, ¶¶ 27-33, 416 P.3d at 771-73. Based on the record, we found no reasonable probability that the jury would have found the victim was the aggressor. *Id.*, 2018 WY 29, ¶ 34, 416 P.3d at 773.

[¶29] We similarly conclude that the evidence in Mr. Iverson's case leaves no reasonable probability that the verdict would have been more favorable to Mr. Iverson without the erroneous instruction.

[¶30]   Affirmed.