# THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 122

OCTOBER TERM, A.D. 2025

November 6, 2025

JAMES FRANKLIN MAVIGLIANO,

Appellant
(Defendant),

v.                                                              S-25-0072

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*

Office of Public Defender: Brandon Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel. Argument by Mr. Bennett.

*Representing Appellee:*

Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, JJ, and KASTE, DJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    A jury convicted James Franklin Mavigliano of second-degree murder and possession of a controlled substance.  On appeal, Mr. Mavigliano challenges only his second-degree murder conviction.  He asserts the district court committed plain error when it did not include a self-defense interrogatory on the verdict form.  We affirm.

## ISSUE

[¶2]    Mr. Mavigliano raises one issue which we rephrase as: Did the district court commit plain error when it did not include a self-defense interrogatory on the verdict form?

## FACTS

[¶3]    On March 5, 2024, police and medical personnel were dispatched to Room 20 of Topper Bob's Motel in Casper, Wyoming, after management reported finding an unconscious man in the room.  Soon after arriving on scene, medical personnel pronounced the man dead.  Officers identified the deceased man as Chance Arias, the person who had been renting Room 20 for the previous two weeks.  Mr. Arias had observable injuries indicative of assault, including: bruising above his eyes; blood coming from his nose, mouth, and ear; ligature marks on his neck; and petechiae in his eyes.

[¶4]    The manager of Topper Bob's Motel provided surveillance footage from two cameras near Room 20 to the investigating officers.  These videos showed a man and woman going in and out of Mr. Arias's room multiple times between 6:35 p.m. and 9:13 p.m.  When the couple left the room at 9:13 p.m., the man was carrying a blue duffle bag.  One of the officers recognized the woman in the video as Amber Cook.  Still photos taken from the surveillance videos were circulated to the officers who were searching the area for both suspects.  Officers located Ms. Cook in an alley a couple of blocks from the motel.  Officers found the male suspect at a bus stop a few blocks away and subsequently identified him as James Mavigliano.

[¶5]    When the police took Mr. Mavigliano into custody, he had a pipe with methamphetamine residue inside of it in his possession.  Mr. Mavigliano also had the key to Room 20 in his pants pocket.  Officers found a blue duffle bag at the bus stop with Mr. Mavigliano that matched the duffle bag seen on the surveillance footage.  Mr. Mavigliano said the bag did not belong to him.  During their search of the duffle bag, officers found a broken, bloody lamp.  Officers located pieces of that lamp along with the dented lamp shade and light bulb during their search of Room 20.  The ligature marks on Mr. Arias's neck appeared to match the indentations in the lamp's cord, and there appeared to be blood located within the cord.

1

[¶6]     After being given his Miranda advisements, Mr. Mavigliano agreed to speak with the detectives.  Mr. Mavigliano admitted to killing Mr. Arias.  Mr. Mavigliano said he met Ms. Cook near C85 Liquors and walked with her to Mr. Arias's hotel room.  Ms. Cook was homeless, and Mr. Arias had allowed her to stay in his room for the past couple of nights due to the cold weather.  Ms. Cook and Mr. Mavigliano both smoked methamphetamine in the room, and Mr. Mavigliano gave Mr. Arias some marijuana to thank him for allowing Ms. Cook to stay in the room.  After they had been in the room for approximately 30–45 minutes, Mr. Arias started accusing Mr. Mavigliano of being loud and disrespectful.  Mr. Mavigliano decided to leave, but Mr. Arias stepped between Mr. Mavigliano and the door.  Mr. Mavigliano saw Mr. Arias's shoulder "twitch" and his hands begin to come up, and he believed Mr. Arias was going to punch him, so Mr. Mavigliano punched Mr. Arias in the face.  Mr. Mavigliano then punched Mr. Arias five or six more times in the head, and the two men fell onto the bed.  Mr. Mavigliano was on top of Mr. Arias on the bed.  At some point during the altercation, Mr. Mavigliano hit Mr. Arias on the head with a lamp.  Mr. Arias continued to struggle, and Mr. Mavigliano eventually wrapped the lamp cord around Mr. Arias's neck and strangled him until Mr. Arias stopped fighting.  He knew Mr. Arias was dead when he heard a sound like air coming out of a tire.  He did not think about calling 911 or attempting any lifesaving measures because he knew Mr. Arias was dead.  Mr. Mavigliano admitted Mr. Arias never laid a fist on him, never threatened to "beat him up" or kill him, Mr. Mavigliano was not worried Mr. Arias was going to hurt him, and Mr. Arias did not threaten him with a weapon.

[¶7]     The State charged Mr. Arias with second-degree murder and misdemeanor possession of a controlled substance.  The case proceeded to a jury trial beginning on December 9, 2024.  In his opening statement, defense counsel admitted Mr. Mavigliano killed Mr. Arias, but he claimed Mr. Mavigliano did so in self-defense.  The State played the video of Mr. Mavigliano's interview with the detectives during the trial.  During the jury instruction conference, the parties discussed the self-defense instructions at length.  However, discussion of the verdict form was brief and pertained only to the format of the lesser included offense interrogatory:

> THE COURT: Verdict?
>
> [PROSECUTOR]: The only -- the part that I don't get here is if you did not -- if you find the defendant guilty of murder in the second degree, do not answer  One (a) and proceed to Two.
>
> [DEFENSE ATTORNEY]: Well, One (a) is the second lesser included.
>
> THE COURT: Two is the possession charge.
>
> [DEFENSE ATTORNEY]: So, yeah, if he's found guilty on

2

One, then One (a) is unnecessary. It would be a waste of time.

[PROSECUTOR]: I think it is in good order.

[DEFENSE ATTORNEY]: Agreed.

THE COURT: All right.

Defense counsel did not request a special interrogatory asking the jury to determine whether Mr. Mavigliano acted in self-defense.

[¶8]   Consistent with the parties' proposed instructions and applicable pattern jury instructions, the district court gave, among others, the following Jury Instructions and Verdict Form:

**[Elements of second-degree murder.]**

The elements of Murder in the Second Degree, as charged in this case, are:

1.    On or about March 5, 2024
2.    In Natrona County, Wyoming
3.    The Defendant, James Mavigliano
4.    Purposely and
5.    Maliciously
6.    Killed Chance Arias, and
7.    The Defendant did not act upon a sudden heat of passion.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the [D]efendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the [D]efendant not guilty.

**[Self-defense.]**

The State must prove beyond a reasonable doubt that the [D]efendant did not act in self-defense. Self-defense is a

3

right that can be exercised only when the person employing it has the right to do so at the moment it is used. Whether he has that right depends on what is reasonably necessary under all the circumstances. If you have reasonable doubt about whether the [D]efendant acted in self-defense, you must find the [D]efendant not guilty.

**[Unanimity and burden of proof.]**

The verdict "must express the individual opinion of each Juror" and "must be unanimously agreed to"; to convict, "every material and necessary element . . . must be proved beyond a reasonable doubt."

**[Verdict form.]**

### VERDICT

1. We the jury, duly empaneled and sworn to try the above entitled cause, do find unanimously that as to the crime of Murder in the Second Degree, as charged in this case, the Defendant, James Mavigliano, is:

_____ Not Guilty
_____ Guilty

If you find the [D]efendant "Guilty" of Murder in the Second Degree, do not answer #1A and proceed to #2. If you find the defendant "Not Guilty" of Murder in the Second Degree, proceed to #1A for Manslaughter.

1A. As to the lesser included offense of Manslaughter, we the jury, duly empaneled and sworn to try the above entitled cause, do find unanimously that the Defendant, James Mavigliano, is:

_____ Not Guilty
_____ Guilty

Mr. Mavigliano did not object.

4

[¶9]    The jury found Mr. Mavigliano guilty of second-degree murder and possession of a controlled substance.  The district court sentenced Mr. Mavigliano to 62 years to life in prison on the second-degree murder charge and time served on the possession charge.  This appeal timely followed.

## STANDARD OF REVIEW

[¶10]  Mr. Mavigliano argues the district court erred by using a verdict form that did not contain a special interrogatory that would have required the jury to reach a unanimous verdict as to whether he acted in self-defense.  Mr. Mavigliano did not offer a verdict form with a special interrogatory, nor did he object to the district court's proposed verdict form.  Because there was no objection below, we apply a plain error standard of review. *Iverson v. State*, 2025 WY 19, ¶ 13, 563 P.3d 496, 499 (Wyo. 2025) (citing *Lee v. State*, 2024 WY 97, ¶ 12, 555 P.3d 496, 499 (Wyo. 2024); W.R.Cr.P. 30(a) (2023)).  To establish plain error, Mr. Mavigliano must show: "(1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice." *Id.* (quoting *Kobielusz v. State*, 2024 WY 10, ¶ 24, 541 P.3d 1101, 1108 (Wyo. 2024)).  "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error." *Id.* (quoting *Lee*, ¶ 12, 555 P.3d at 499).

## DISCUSSION

[¶11]  The first prong of the plain error analysis is satisfied because the alleged error is clearly reflected in the record.  "The crux of this case is the second prong of the analysis—whether the district court violated a clear and unequivocal rule of law in a clear and obvious manner.  A merely arguable violation is insufficient to establish plain error." *Hayes v. State*, 2024 WY 135, ¶ 18, 560 P.3d 902, 906 (Wyo. 2024) (citing *Ingersoll v. State,* 2022 WY 74, ¶ 10, 511 P.3d 480, 484 (Wyo. 2022)).  We will reverse the district court's decision "only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Id.* (quoting *Dixon v. State*, 2019 WY 37, ¶ 27, 438 P.3d 216, 228 (Wyo. 2019)).

[¶12]  Mr. Mavigliano asserts the district court should have specifically instructed the jury it needed to unanimously find Mr. Mavigliano did not act in self-defense.  Because there was no such instruction, Mr. Mavigliano contends the verdict form needed to contain an interrogatory where the jury made a unanimous finding regarding whether Mr. Mavigliano acted in self-defense.  Without such an instruction or interrogatory, he asserts "a reasonable jury could conclude that they need not be unanimous in their verdict as to whether the State failed to prove beyond a reasonable doubt Mr. Mavigliano did not act in self-defense."  Mr. Mavigliano contends by not providing this instruction or an interrogatory on the verdict

form, the district court transgressed a clear and unequivocal rule of law because it provided confusing or misleading jury instructions.

[¶13]  The district court instructed the jury the State had to prove beyond a reasonable doubt Mr. Mavigliano did not act in self-defense, and it must find him not guilty if it had reasonable doubt about whether he acted in self-defense.  The district court also instructed the jury their "verdict must be unanimously agreed to by each and every one of you[,]" and they should complete the verdict form "[w]hen you have reached a unanimous verdict as to each of the issues presented to you[.]"

[¶14]  Mr. Mavigliano admits the jury was properly instructed regarding the law of self-defense.  He does not cite to any Wyoming law requiring the district court to give a separate instruction informing the jury its finding on self-defense must be unanimous or mandating the use of a self-defense interrogatory.  Instead, he relies on a case from the Ninth Circuit, *United States v. Ramirez*, 537 F.3d 1075 (9th Cir. 2008).  In *Ramirez*, the Ninth Circuit found the district court did not abuse its discretion when it refused to use a verdict form with a special self-defense interrogatory because the jury had been properly instructed "that it must unanimously reject Ramirez's self-defense theory in order to find Ramirez guilty." *Id.* at 1083 (citation omitted).  The instruction given in *Ramirez* conformed with the "Special Issue Unanimity" instruction contained in the Ninth Circuit's model jury instructions. *Id.*  However, the Ninth Circuit did not say the trial court would have been required to use a verdict form with a special self-defense interrogatory if the unanimity instruction had not been given.  In fact, the Ninth Circuit recognized "as a rule, special verdicts in criminal trials are not favored." *Id.* (quoting *United States v. Reed,* 147 F.3d 1178, 1180 (9th Cir. 1998)).  "This rule is fashioned to protect the rights of criminal defendants by preventing the court from pressuring the jury to convict." *Id.* (quoting *Reed*, 147 F.3d at 1180).

[¶15]  Wyoming's pattern criminal jury instructions do not contain a special self-defense unanimity instruction. *See* W.Cr.P.J.I. Table of Contents (2020).  This Court has never required the use of such an instruction.  "The district court judge has significant discretion in crafting jury instructions, 'so long as they correctly state the law and fairly and adequately cover the issues presented.'" *Kobielusz*, 2024 WY 10, ¶ 24, 541 P.3d at 1108 (quoting *Mackley v. State*, 2021 WY 33, ¶ 17, 481 P.3d 639, 643 (Wyo. 2021)).  Further, like the Ninth Circuit, we have recognized the use of special interrogatories in criminal cases "is more controversial [than in civil cases], and they are generally not favored." *Neidlinger v. State*, 2021 WY 39, ¶ 43, 482 P.3d 337, 349 (Wyo. 2021).  Although the district court had the discretion to consider giving a special self-defense unanimity instruction or including a self-defense interrogatory on the verdict form, there is no clear and unequivocal rule of law requiring either to be given.  Mr. Mavigliano failed to establish the district court violated a clear and unequivocal rule of law.  Because he cannot satisfy the second prong of plain error review, we do not need to discuss the prejudice prong. *See Ridinger v. State*, 2021 WY 4, ¶ 43, 478 P.3d 1160, 1170 (Wyo. 2021).

6

## CONCLUSION

[¶16]   The district court did not commit plain error by not giving a self-defense unanimity instruction or using a verdict form that did not include a self-defense interrogatory. Affirmed.